WILLIAM SILVERWOOD vs. JOHN H. B. LATROBE and
others.

### Cemetery—Rights of Lot-holder.

Where the charter of a cemetery company provided "that every lot
conveyed in said cemetery shall be held by the proprietor for the
purpose of sepulture alone, and for none other, as real estate," and
by an instrument in writing, under seal, a lot in the cemetery was
conveyed to a grantee, his heirs and assigns forever, for such pur-
pose, together with the right to cultivate trees, shrubs and plants
in the same, and he had exercised this right for more than twenty
years, employing skilful and competent persons of his own selec-
tion to do the work, the cemetery company cannot, by any sub-
sequent order, prevent the exercise of this right by the lot-holder
personally, or by any agent or servant he may employ.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT,
STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*John V. L. Findlay,* for the appellant.

Bearing in mind the kind of work which the appellant
desired to have done, the question may then be stated in
this way : Had he or not under his deed, and the unbroken
practice of years, the right to employ and pay a man to
trim the myrtle on his lot; rake off the leaves and offal,
and keep it in usual condition; or, put in another way—
could he be said to be in full enjoyment of this right
if he was forced to accept the alternative of employing the
company to do the work, or not have it done at all, unless
he did it himself in person ? It will be observed by the ex-

press terms of the regulation that Mr. Silverwood was not to be prevented from doing the work in person, but the prohibition was only aimed against the employment of any one to do it for him, except the company.

The bill states that his agent, Mr. Farley, was the owner of a lot himself in Greenmount. As it was his business to attend to lots and keep them in order, it is fair to presume that he took care of his own lot, so that on the very day he tendered himself as the appellant's agent and was refused he may have been admitted to do precisely the same work on his own account. It is very evident then that the argument as to the necessity of a common design in decorating the grounds and lots as one of the reasons of policy underlying the regulation, must be dismissed, because every lot-holder who works with his own hands, or chooses to do so, is at liberty to improve his lot as he pleases, while the lots of others who may refuse to be coerced are permitted to run wild and grow to seed without any restraining or improving hands. It is equally apparent that for some reason the company did not think it had the power to prevent a lot-holder in person from exercising full control over his lot within the limitations of his deed.

Narrowing the question down it assumes this form: Can a lot-holder who by the concession of the company has the right to improve his lot by his *own hands* be prevented from doing the *same* work by the *hands of another?* Is the right of a lot-holder to cultivate, etc., the same thing as to *have it done* for him by some one else?

The proposition of the appellees, that there was a public duty imposed by the charter, which could not be abdicated by the grant of a privilege inconsistent with its performance, and that its immediate resumption was obligatory, is equally untenable. There was no duty imposed by the charter to keep the *lots*; it was to preserve the *grounds* in decent repair that permanence was given to the establishment. (See preamble of Act of 1837, chapter 164.)

Full power was given to sell lots, upon such conditions as the proprietors chose to prescribe, and unquestionably these proprietors, as the paramount owners of the soil, ·could have stipulated for any covenant in the deed to which the purchasers would assent. No stipulation affecting the right of the lot-owner, other than those mentioned in the deed, was made, but he was left to take care of his lot, while the duty of taking care of the grounds rested upon the company. Every regulation necessary to prevent the individual.lot-holder from interfering with the rights of his neighbor, or from marring the general appearance of the cemetery, by unsightly monuments or offensive inscriptions, by spreading trees, vagrant roots, or *otherwise*, was adopted, and expressed upon the face of the deed.

If the power conferred by the charter, to make rules and regulations for the government of the lot-holders, is broad enough to authorize the adoption of a rule excluding the agents of lot-holders from doing work on their lots, and if such a rule is necessary to enable the company to fulfil the object of its incorporation, then why, in the exercise of the same power, cannot a more general regulation be adopted, excluding the principals themselves, which will more effectually accomplish the same object?.

The only answer to the question is, that lots have been sold and conveyed without reserving the right, which, on the contrary, has been expressly granted away.

Not only is the right to cultivate plants, &c., conveyed by the deed, but the right also to erect, within certain restrictions, stones and memorial monuments to the dead. See *Ashby vs. Harris*, 3 *L. R. C. P.*, 523, 37 *L. J., M. C.*, 164, 16 *N. R.*, 869, *and* 18 *L. T. N. S.*, 719; 3 *Jacob's Fisher's Dig.*, 4392; *Mount Moriah Cemetery vs. Commonwealth*, 81 *Penn. St.*, 235.

But the regulation not only destroys the rights of the appellant under his deed, and as enjoyed by him and

other lot-owners ever since the establishment of the ceme-
tery, but is in itself unreasonable and mischievous. The
privilege of improving lots, as the practical outcome of
the order, is restricted to owners who are able and willing
to do the work in person. . That very large class, such as
women or old men who, by reason of physical weakness,
cannot undergo the labor even of cultivating a few shrubs,
are excluded. A lot-holder of this class would not be per-
mitted to introduce his servant into the cemetery grounds
to help him, because it is the plain design of the order, by
preventing all work on lots except by the lot-owner in
person, to force the employment of the company, for the
performance of services not only where some skill is re-
quired, but also to do work of as simple a character as
digging and trimming, or clearing off leaves from the
graves. As a means of raising revenue, any other con-
struction would render the regulation abortive.

It was made abundantly clear at the argument below
that the corporation in this case was not created for a
public purpose in a legal sense, however much it may
have been in a popular sense. *Regents of the University of
Maryland vs. Williams,* 9 *Gill & J.,* 398, 401.

*S. Teackle Wallis,* for the appellees.

There is no pretence or contention, on the part of the
appellees, that the Cemetery Company is a political cor-
poration, or has any political powers. Nor is there any sug-
gestion that it has any authority to derogate from vested
rights. Neither does it undertake to dispute the gen-
eral maxim that a man, who has a right to do an act, can
do it by an agent, if he pleases. The whole authority of
the corporation to pass the order of which the appellant
complains, is claimed to be derived from its charter. The
grounds on which the claim is rested are set forth, in its
answer, with particularity and it is believed with clear-
ness. The contention, in the argument, that it claims any

thing outside of the charter, is founded on a misapprehension of its defences and position. It is respectfully insisted :

1. That by the terms of the charter (sec. 2,) the President and Managers, being first authorized to " lay out and sell or dispose of burial lots," are further empowered, in the same sentence and the same connection, "*to make such by-laws, rules and regulations as they may deem proper, for conducting the affairs of the corporation, for the government of lot-holders and visitors to the cemetery,*" &c.

Under this provision it is claimed by appellees that every purchaser of a lot took with full notice of the power of the company to change, in its discretion, any by-laws or regulations existing at the time of his purchase, and to make any new rules or regulations, "for the government of lot-holders," which it might deem proper, at any time. This provision, it is insisted, was as much a condition or reservation, attached to the conveyance of every lot, as if it had been, specifically and in words inserted, as such, in the deed itself. The only qualification, which the law would attach to the exercise of the power, would be that it should be reasonable. This, the appellees contend that the order in question manifestly was, in the interest of that harmony and good taste, in cultivation and decoration, which is so much disturbed by the indulgence of individual fancies and caprices. It was, further, eminently proper, to enable the company and its superintendent to exercise necessary control over the laborers employed in the cemetery ; instead of leaving that important police-regulation altogether in the hands of a multitude of gardeners and their agents, themselves irresponsible to the officers of the company, and selecting irresponsible labor merely on the basis of its cheapness.

Upon this theory of law and fact the appellees respectfully contend that the deed to the appellant gave him no rights, as to the cultivation of his lot, which were not sub-

ject to the future exercise of the power of regulation which has been referred to, and that, consequently, when that power was reasonably exercised, there was no invasion of his vested rights whatever. He took whatever rights he had, in distinct subordination to such exercise, and what was vested in him was only vested, with the reservation that it should be liable to "government," at pleasure. The right granted to him, by his certificate of ownership, "to cultivate trees, shrubs and plants" in his lot, was therefore not unlawfully abridged by requiring, that if he desired his lot to be cultivated by any one but himself or a member of his family, the agents to be selected should be subject to the choice and regulation of the company.

2. That even if the clause in the lot-holders' certificate relied on by the appellant can be construed as a surrender, *pro tanto* of the company's right, under the charter, to make, in the future, such "by-laws, rules and regulations, for the government of lot-holders," as it might deem proper, such surrender was not within the powers of the corporation, but was *ultra vires* and inoperative. Although not a political corporation, in any sense, nor clothed with any political powers, it is what is familiarly known as a private corporation, organized for public purposes. The burial of the dead and the preservation of the places where their remains are deposited, are matters of sacred public concern, and are frequently undertaken by municipal corporations themselves, as is well known. 1 *Dillon on Municip. Corp.*, sec. 372. When they are entrusted to private corporations the objects do not cease to be public. According to the rulings of this Court, in a celebrated case, although the corporation may be private, its purposes may be of a purely public character and part of a general police-regulation of the State. *Regents vs. Williams*, 9 *Gill & J.*, 388, 390, 391. The charter of Greenmount, in order to carry out such purposes, requires that fifty acres "shall be forever appropriated and set apart as a cemetery, which

so long as used as such, shall not be liable to any tax or
public imposition whatever." It is further provided that.
no streets or lanes shall be opened through the grounds.
This Court has recognized the solicitude of the Legislature,
by these provisions, to secure the perpetuity of the ceme-
tery, as a place of repose for the dead. *Mayor and City*
*Council of Baltimore vs. Greenmount Cemetery,* 7 *Md.,* 537.
Its preservation, as such, is a sacred duty, imposed by the
charter, which the corporation cannot dispense with or
lawfully escape. It is not a stockholding nor a dividend
paying corporation—not a money making concern, in any
way. Its care is only the maintenance and preservation
of its grounds, as a perpetual cemetery. If the lots are
not part of the grounds, as claimed by appellant, what are
they?

It is believed to be well established, indeed rudimental
law, that wherever the State in chartering a corporation, for
public ends of any sort, has favored it with aid in any shape,
*by exemption from taxation* or any other exemption, grant
or privilege, it is always construed as imposing an implied
obligation and engagement to the State to fulfil the pur-
poses of the grant. The rights of the corporation, in such
cases are coupled with duties which it cannot abdicate, alien
or surrender. 2 *Morawetz on Priv. Corp.,* secs. 656-1114,
*et seq.; Kenton, &c. vs. Bank Lick Turnpike Co.,* 10 *Bush,.*
529, and see *Regents vs. Williams, ubi supra.*

In the case at bar, the power to make rules and regu-
lations, which is conferred by the charter, imposed the duty
to make them, whenever the objects and purposes of the in-
corporation should render it proper, in the judgment of the
competent officers, to carry out the ends for which the com-
pany was created and in furtherance of which it received the
State's bounty. It had no right to deprive itself of that.
authority, in whole or in part, or disqualify itself, in any way,
for the performance of all its duties by the exercise of all
its granted powers. Of this want of right, on its part, the

appellant was bound to take notice, as of any other limitation or condition of the charter. An illegal or unauthorized act worked no estoppel, and he can set up none, under it.

The cases cited by the appellant, as to the proper construction of the clause, in his certificate, which he relies on, were controlled by local regulation or custom, and are quite apart from the questions arising under the charter of Greenmount.

YELLOTT, J., delivered the opinion of the Court.

The appellant is the owner of a lot in Greenmount Cemetery; having paid for said lot and received from the proprietors a certificate of ownership which is dated June 17th, 1865. By the Act of 1837, ch. 164, an association of citizens residing in Baltimore City became incorporated by the name of the proprietors of The Greenmount Cemetery. The eighth section of the Act provides: "That every lot, conveyed in said cemetery, shall be held by the proprietor for the purpose of sepulture alone, and for none other, as real estate, and shall not be subject to attachment or execution." The land is conveyed by an instrument in writing under seal, to William Silverwood, his heirs and assigns forever, for the purposes of sepulture alone, with the right of way to and from the lot so conveyed along the avenues, walks, paths and ways of said cemetery.

By the second clause of the instrument, thus conveying this property, the right is given to the grantee of the lot " to erect stones, monuments or sepulchral structures therein, and to cultivate trees, shrubs and plants in the same."

By the third and fourth clauses the grantors have secured a right of entry for the purpose of removing anything placed on the lot by the grantee which may have become dangerous, inconvenient or detrimental, or which

may be deemed by the president or managers offensive or improper; but there is no reservation of a right of entry by the grantors for any other purpose.

During a period extending from June, 1865, to April, 1887, the appellant had exercised his right to plant and cultivate trees, shrubs and flowers in his lot, and had employed skillful and competent persons of his own selection to do this work. But early in the last mentioned year the proprietors passed an order prohibiting any person, other than a lot-holder or a member of his or her family, from doing any work in the cemetery except by a permit from the superintendent. In this order the board of managers declare their intention to take entire charge, through their employés, of all work that may be necessary to the proper care of all lots in the cemetery and authorize the superintendent to make arrangements with the lot-holders for the particular care of their respective lots, in order to carry out their intention thus declared.

The appellant's agent, sent to cultivate his lot, having been excluded by the superintendent, a bill of complaint was filed in the Circuit Court of Baltimore City, asking for an injunction to restrain the said board of managers and the said superintendent from further interference with the plaintiff's right, by obstructing or denying to his agents free access to his said lot, for the purpose of improving or repairing the same. A decree having been passed by the Court below, refusing the relief asked for and dismissing the bill, the questions in controversy have been brought into this Court by an appeal.

The Act of 1837, ch. 164, creating this corporation, does not delegate to it any political powers. The right "to make such by-laws, rules and regulations as they may deem proper for conducting the affairs of the corporation, for the government of lot-holders and visitors, and for the transfer of stock and the evidence thereof" is a right given by nearly every charter creating a corporation, and the

grant of this right does not invest a corporation with political powers and delegate to it any portion of the State's sovereignty.

Undoubtedly this corporation had the right to make by-laws, but no by-law was in existence when the appellant purchased and paid for his lot, which prevented him from employing his own agents for its cultivation and improvement. Nothing is clearer than if a man, in the transaction of his own business, has a right to do any act, he can perform it by the hands of his agent.

The general maxim, as old as our system of jurisprudence, is that whatever a man, *sui juris*, may do of himself, he may do by another. *Coke Litt.*, 258. Had not this principle been always recognized it is difficult to perceive how the multiform transactions of mankind could have been successfully conducted. The maxim *qui facit per alium facit per se* carries with it, by implication, a recognition of the right of every man, unless exercising certain delegated powers and acting in a fiduciary capacity, to employ an agent in the transaction of his business. Therefore, when by the terms of a deed or other instrument, a man has a right to do a certain thing, he can do it either with his own hands or by the hands of an agent; and if the agent is interfered with by the grantor, it is an interference with the rights of the grantee.

" When burying lots in a cemetery have been conveyed by a corporation, a right of property is conferred on the purchaser, which is like any other right to real estate." *Windt vs. German Reformed Church*, 4 *Sandf. Ch.*, 471. Unlike the case of *Partridge, et al. vs. First Independent Church of Baltimore*, 39 *Md.*, 631, the appellant has a title to the lot by virtue of an instrument of writing under seal, which operates as a deed of conveyance. The Act of 1837 declares the property thus acquired to be real estate. The grantee has a qualified fee, limited to the purposes of sepulture.

The second clause of the instrument, conveying the property, gives him the right to plant and cultivate trees, shrubs and flowers. This he could do either with his own hands or by employing an agent to do the work for him. When he accepted the deed, and paid the purchase money, he acquired this right. Had he been unable to secure the right, it is possible, and even probable, that he would not have purchased the property. No order subsequently passed by the grantors can be so construed as to have a retroactive operation, and thus limit or annul the privilege secured to the grantee by a solemn instrument under seal. As said by ALDERSON Justice: "Where the law allows a party to contract, it will not permit that contract, by any matter arising *ex post facto,* to be made of no value." *Giles vs. Grover,* 1 *Clark & Finn.,* 106.

In *Ashby vs. Harris,* 3 *L. R. C. P.,* 523, this very question was decided. The burial board of the parish of St. Pancras, being a corporation, had granted, by an instrument under seal, the privilege of making and constructing a private grave, and the exclusive right of burial and interment therein. The grantee had been accustomed to plant and cultivate flowers by the hands of her agents. Ten years after the grant had been made, the board determined to undertake the planting of graves themselves, and the superintendent was authorized to prevent other persons from entering the cemetery for such purpose. Notice was also given to the owners of private graves of the determination of the board. After such notice had been given, Harris, as the agent of the grantee, entered for the purpose of planting the grave conveyed by the said instrument under seal. He was assaulted and an action for damages was instituted. It was held that "the board clearly had no right to make regulations to interfere with that which they had granted in perpetuity." That "any subsequent regulations made by them would be repugnant and void. They might make general rules

Silverwood *vs.* Latrobe, *et al.*

and regulations for the management of the cemetery, but not special rules which would derogate from prior grants."

It is clear that the Court below committed an error in refusing to grant the relief asked for in the bill of complaint, and its decree should therefore be reversed.

*Decree reversed, and*
*cause remanded.*

(Decided 15th March, 1888.)

Judges MILLER and BRYAN dissented.