STATE OF MINNESOTA v. CHICAGO, MILWAUKEE & ST. PAUL RAIL-
WAY COMPANY.

SAME v. GREAT NORTHERN RAILWAY COMPANY.

SAME v. CHICAGO GREAT WESTERN RAILWAY COMPANY.

SAME v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY
COMPANY.[1]

May 27, 1897.

Nos. 10,474, 10,476, 10,479, 10,485—(52, 53, 54, 55).

**Regulation of Carriers—Constitutional Law.**

> The proviso in Laws 1895, c. 149, § 11, requiring railroads and trans-
> portation companies to turn over to a storage company or public ware-
> houseman all property which the consignee fails to call for or receive
> within 20 days after notice of its arrival, is unconstitutional and void,
> not being a lawful exercise of the police power of the state.

The Chicago, Milwaukee & St. Paul Railway Company, the Great
Northern Railway Company, the Chicago Great Western Railway
Company, and the Minneapolis, St. Paul & Sault Ste. Marie Railway
Company were indicted under Laws 1895, c. 149, for refusing to turn
over unclaimed freight to a licensed public warehouseman after twen-
ty days from the receipt thereof. Demurrers to the indictment were
overruled with leave to defendants to plead, and the cases certified
from the district court for Ramsey county, Brill, J. Orders over-
ruling demurrers reversed.

*H. W. Childs,* Attorney General, and *M. L. Countryman,* for the
state.

Laws 1895, c. 149, is a valid exercise of legislative power. Brass
v. Stoeser, 153 U. S. 391; Budd v. New York, 143 U. S. 517; People
v. Budd, 117 N. Y. 1; Davis v. State, 68 Ala. 58; Brechbill v. Ran-
dall, 102 Ind. 528; Delaware v. Central, 45 N. J. Eq. 50; Baker v.
State, 54 Wis. 368; State v. Marshall, 64 N. H. 549; Pierce v. State,
63 Md. 592; Powell v. Com., 114 Pa. St. 265; Donnell v. State, 48
Miss. 661; Cooley, Torts, § 285; Cooley, Const. Lim., § 742; Tiedeman,
Limit. Police Power, § 2; Plumley v. Mass., 155 U. S. 462; Dent v.
W. Va., 129 U. S. 114; Smith v. Alabama, 124 U. S. 465.

[1] Reported in 71 N. W. 400.

*W. H. Norris,* for Chicago, Milwaukee & St. Paul Railway Co.

Goods shipped from one state into another are beyond interference by state legislation, until, after coming to the importer, he has sold them or broken up the original packages. Telegraph Co. v. Texas, 105 U. S. 460; Robbins v. Shelby, 120 U. S. 489. The statute is also void as laying an impost upon imports. Under it the imposition of warehouseman's charges, whether with or without insurance premiums added to his own for storage, is not, like his license fee, a statutory charge upon his general occupation, or a tax upon the receipts from a particular storage, to be by him in turn exacted from the goods and their owner, but a direct charge upon the body of the goods themselves, made enforceable as a lien, without support of any voluntary contract, and without consent of the owner to its creation or enforcement. And this imposition upon the goods is to be made upon goods imported from another state while in the hands of the carrier as carrier for and with the consent of the importer, and in the original unbroken packages, while the importation is short of legal consummation, and the goods, because unsold and unbroken, are still articles of interestate commerce. The act also abridges the privileges and immunities of citizens of the United States. It abridges freedom of contract between owner and shipper, if the latter be also consignee; between the carrier and a shipper contracting in behalf of the consignee; and between carrier and consignee further contracting at the termination of the technical transportation. It forbids the owner of goods, whether shipper or consignee, to keep the goods more than twenty days after arrival, as long as he chooses, where he chooses, and can arrange to have them kept to his satisfaction. No other owner of goods is so restricted or debarred of natural right. It abridges the owner's right to have his goods delivered to him by the carrier free from all charges and liens which he or the consignor for him did not contract. Ex parte Kuback, 85 Cal. 274; Printing v. Sampson, L. R. 19 Eq. Cas. 462. The act authorizes taking without due process of law. Kennard v. Louisiana, 92 U. S. 480; U. S. v. Cruikshank, 92 U. S. 542; Baker v. Kelley, 11 Minn. 358 (480); Wynehamer v. People, 13 N. Y. 378; State v. Becht, 23 Minn. 411. The act allows a license to a domestic carrier and denies it to a foreign carrier, thus discriminating against a foreign carrier. In con-

nection with the regulation of commerce it is said, concerning state laws excluding divers classes, that the right to exercise the police power can only arise from a vital necessity for its exercise, and can not be carried beyond that necessity. Prentice, Police Powers, 10, 11; Henderson v. Mayor, 92 U. S. 259; Chy Lung v. Freeman, 92 U. S. 275; People v. Compagnie, 107 U. S. 59. Citing, as to the further extent of the police power, Mugler v. Kansas, 123 U. S. 623; Cooley, Const. Limit. 577; People v. Jackson, 9 Mich. 285; Lake View v. Rose Hill, 70 Ill. 192; State v. Noyes, 47 Me. 189; Tiedeman, Limit. Police Power, § 1; Robbins v. Shelby, 120 U. S. 489.

The act is unconstitutional and void as partial, unequal, and class legislation, based upon a classification wholly arbitrary, without natural reason, and unjust. See City v. Weber, 44 Mo. 547; Eden v. People, 161 Ill. 296; Nichols v. Walter, 37 Minn. 264.

*Frank B. Kellogg* and *Daniel W. Lawler*, for Chicago Great Western Railway Co., *M. D. Grover* and *C. Wellington*, for Great Northern Railway Co., *M. D. Munn*, for Minneapolis, St. Paul & Sault Ste. Marie Railway Co.

To the point that the act interfered with the right of the carrier and the consignee or consignor to contract, cited In re Jacobs, 98 N. Y. 98; People v. Gillson, 109 N. Y. 399; Tiedeman, Limit. Police Power, § 92; Ramsey v. People, 142 Ill. 380; Richie v. People, 155 Ill. 98; State v. Julow, 129 Mo. 163; In re House Bill No. 203, 21 Colo. 27; Com. v. Perry, 155 Mass. 117; Godcharles v. Wigeman, 113 Pa. St. 431; State v. Loomis, 115 Mo. 307; Frorer v. People, 141 Ill. 171; State v. Fire, 33 W. Va., 188; Low v. Rees, 41 Neb. 127.

MITCHELL, J. The defendants in these actions were severally indicted for a refusal to turn over to a public warehouseman certain goods which had not been called for by the consignee, pursuant to the provisions of Laws 1895, c. 149, § 11, entitled

"An act to license and regulate the business of storage companies and public warehousemen (other than warehousemen of grain in bulk) and to provide a penalty for violation of the same."

Section one of the act provides that

"the governor may license any suitable person, persons, or corpor-

ations established under the laws of this state, and having their place or places of business within this state, to carry on the business of storage companies or public warehousemen, who may keep and maintain public warehouses for the storage of goods, wares and merchandise, etc., excepting grain in bulk. Said license must be obtained within thirty days from and after the passage of this bill, upon the payment into the treasury of the state of the sum of ten dollars, and annually thereafter, by the payment of a like sum, to be credited to the school fund of the state."

Section nine makes it unlawful for any one not duly licensed under the provisions of the act to conduct or carry on the business of a storage company or warehouseman in this state. Section ten makes a violation of the provisions of sections nine and eleven a misdemeanor punishable by fine. Section eleven, under which the indictments were drawn, reads as follows:

"Sec. 11. This act shall not be construed to apply to any railroad or transportation company who holds goods, wares, or merchandise in cars, freight houses or warehouses for a period not exceeding twenty days after receipt. Provided, such railroad or transportation company shall, within forty-eight hours after the receipt of such goods, wares, and merchandise, notify the consignee of the arrival thereof in writing, and in case such consignee, or his assigns, fails and neglects to call for or receive said goods, wares or merchandise within twenty days after such receipt of same by any railroad or transportation company as aforesaid, said railroad or transportation company must then turn over said goods, wares, or merchandise to a storage company or public warehouseman, licensed as in this act provided, upon the payment of the charges of said carrier thereon, which charges thus paid by said storage company or warehouseman to said carrier shall be a lien on said goods, wares or merchandise, and enforcible in accordance with sections one, two, three and four, chapter two hundred and two of the General Laws of 1885."

Among other objections to the sufficiency of these indictments, it is urged that the act in question is unconstitutional. The act is certainly a remarkable one. Its provisions contain strong intrinsic evidence that the real purpose of it was not the protection of the public by regulating public warehousemen or by adopting reasonable regulations for the preservation of unclaimed property in the hands of common carriers, but to subserve the interests of a certain class of warehousemen. We have no doubt that the public storage and ware-

house business is one that is subject to the police power of the state to adopt such reasonable regulations as the legislature may deem necessary for the protection of the public who intrust their property to those carrying on such a business. We may also admit that it is within the police power of the state to adopt any reasonable regulations for the preservation and protection of property which has been transported to the place of its consignment by a common carrier, and is abandoned, or not claimed within a reasonable time, by the consignee or owner. It is also true that, where a business is a proper subject of police regulation, the legislature may, in the exercise of that power, adopt any measures they see fit, provided, only, that they adopt such as have some relation to and have some tendency to accomplish the desired end; and if the measures adopted have such relation or tendency, and do not violate some provision of the constitution, the courts will not assume to determine whether they are wise or the best that might have been adopted.

But, while the police power of the state is a very extensive one, it is not without limits. A law enacted in the exercise of the police power must be a police regulation in fact. If it will not conduce to any legitimate police purpose, or if it amounts to an arbitrary and unwarranted interference with the right of the citizen to pursue any lawful business, the courts have a right, and it is their duty, to declare the law unconstitutional. The business of a common carrier and the storage and warehouse business are both lawful without any license or authority from the state. Every one has a right to engage in them, subject only to such regulations and restrictions as are necessary to promote the general welfare. Neither of them is a business which the state has any right to prohibit altogether, or to limit to a favored few by giving them a monopoly of it. Therefore the police power must, when exercised over them, be confined to such restrictions and burdens as are necessary to promote the public welfare, or, in other words, to prevent the infliction of a public injury.

If the first section of this act is to be construed literally as it reads, it would give a monopoly of the public storage and warehouse business to those to whom the governor granted licenses "within thirty days from and after the passage of the act." Under such a construction, the act would be clearly unconstitutional. Again, while the act

68M.—25.

requires every storage company or warehouseman to receive and store all property offered for such purposes by any person, without discrimination, it nowhere, at least in express terms, requires them to advance the charges of the carrier. If they may consent or decline, at their option, to advance these charges, the law would have no reasonable tendency to protect and preserve unclaimed property. It would permit the storage company or warehouseman to accept from the carrier only such business as he might deem to his own personal advantage, and reject the balance. Further, if the proviso to section eleven is to be construed as it seems to read, it would absolutely compel every common carrier in every instance to notify the consignee of the arrival of the goods within 48 hours, and, in case he did not call for or receive the goods within 20 days, to turn them over to a warehouseman, without regard to what agreement or arrangement to the contrary there might be between the carrier and the consignor or consignee, as, for example, that the goods should be shipped or held by the carrier for future delivery. If this is the proper construction of the act, it is clearly unconstitutional, as being an arbitrary and unwarranted interference with the right of parties to contract with reference to the disposition of their own property.

But we shall assume that the law might be cut down by judicial construction so as to obviate all these objections, and that we would be justified in holding that the storage and warehouse business is not limited to those who obtained licenses within 30 days after the act was passed; that public warehousemen are required to advance the charges and receive all unclaimed property tendered them by a common carrier, regardless of the amount of the charges or the value of the property, a construction which we apprehend warehousemen would be loth to assent to; and that the only property which carriers are required to turn over to a warehouseman is property shipped for immediate delivery, and which remains unclaimed for 20 days, in the absence of any agreement between the carrier and consignee that the former should continue to hold it for the latter. There is still an objection to the law which is fatal to it.

There are, and necessarily will be, many places in the state where there is no storage company or public warehouseman who has complied with the provisions of this act. We are justified in stating, by

way of illustration, the fact that there are only three places in the state, St. Paul, Minneapolis, and Duluth, where any one has complied with the provisions of this act and taken out a license. But under this law, wherever the place of consignment may be, even if at the extreme northwestern or southwestern corner of the state, the carrier would be required to transport the goods, or procure them to be transported thence, to a place where there is a public warehouse, and then turn them over. Indeed, it would seem, from the language of the act, that it would be incumbent on the carrier to procure drays or wagons to transport the goods from the depot or landing to the warehouse, and there tender the property to the warehouseman. Such a law, so far from preserving unclaimed property for whom it may concern, would furnish a most effectual way to absorb it with unnecessary costs and charges. It would have no tendency to subserve any public interest, and would impose a most unreasonable burden upon carriers. On this ground we hold that, even if all the other provisions of the act are valid, the proviso in section eleven, in so far as it requires common carriers to turn over property to a public warehouse, is unconstitutional.

The orders overruling the demurrers are therefore reversed and the causes remanded, with directions to the court below to dismiss the indictments.