### NICOLSON *v.* DAFFIN *et al.,* commissioners.

1. The grantee in a deed .to a lot in a public cemetery, for the purpose of sepulture, acquires only an easement in the soil for the purpose of the grant. A municipality acquiring the fee to the cemetery, subject to the easement of the lot-owner, may make reasonable rules for the care and management of lots in the cemetery, agreeably with the grant of the easement. A rule requiring the written authority of the commission charged by law with the superintendence of the cemetery, before any professional gardener or other person for hire can be employed to care for a lot, is unreasonably enforced by the arbitrary refusal to grant permission to a lot-owner to employ a suitable person to care for the lot, because, in the opinion of the commission, they can furnish material and perform the work required cheaper than the service may be elsewhere obtained.
2. Injunction was the proper remedy in this case.
NOVEMBER 14, 1914.

Equitable petition. Before Judge Charlton. Chatham superior court. December 1, 1913.

*David C. Barrow,* for plaintiff.

*John Rourke Jr.* and *David S. Atkinson,* for defendants.

EVANS, P. J. The Evergreen Cemetery Company of Bonaventure, a corporation, sold and conveyed by deed under seal, unto John Nicolson Jr., Matilda Nicolson, Robert B. S. Nicolson, and Mary Matilda Nicolson, their heirs and assigns, forever, as a burial-place for the dead a certain lot in the cemetery, "Upon condition nevertheless that the said John Nicolson Jr., Matilda Nicolson, Robert B. S. Nicolson, and Mary Matilda Nicolson, their heirs and assigns,

shall henceforth and at all times hereafter hold, use, and occupy the said portion of ground hereby granted, solely as a place of interment for the dead, other than persons of color, and to and for no other use or purpose whatsoever; and shall also hold, use, and occupy the same as a part and parcel of the grounds of the said Evergreen Cemetery, and subject to all the by-laws, rules, regulations and ordinances which are or may be ordained and established by the Evergreen Cemetery Co. of Bonaventure, for the government of said Cemetery, legally and by virtue of their charter of incorporation as it now exists, or as it may be hereafter amended." Two of the grantees, Matilda Nicolson and Robert B. S.- Nicolson, died since the making of the deed, and the other two grantees are their sole heirs at law. In July, 1907, the Mayor and Aldermen of the City of Savannah purchased the cemetery from the Evergreen Cemetery Company of Bonaventure. Upon the purchase of the cemetery by the City of Savannah the park and tree commissioners of the city took charge of it. Under the act of the General Assembly establishing such commission they have exclusive control of the cemetery, and have adopted the following rule: "No professional gardener or other person for hire shall be permitted to take care of any private lot or do any work on said lot, without written authority from this commission; but nothing in this rule shall be construed as forbidding any lot owner or member of his or her family from doing work on said lot." On April 3, 1913, Mary Nicolson (who had intermarried with one Moore), with the approval of her brother John, the joint owner of the lot, purchased from a responsible and competent florist of Savannah a wagon-load of fertilizer for the purpose of having the same placed and used upon the lot belonging to them, where the members of their family were buried. This load of fertilizer was sent by the florist to the cemetery, and was met at the gate by Mrs. Moore, who accompanied the wagon into the cemetery for the purpose of directing the driver to her lot. While she was proceeding with the load of fertilizer down the street of the cemetery towards her lot, the agent of the park and tree commissioners in charge of the cemetery required the driver to turn the horse and wagon about, and was proceeding to force the driver to take the wagon from the cemetery. Mrs. Moore protested to the agent, stating that she, as a lot-owner in the cemetery, had purchased the fertilizer, and was taking it to her lot, and that it would

be placed on the lot under her personal direction and supervision; and she demanded that the agent desist until she could communicate with the park and tree commission. She then telephoned the chairman of the commission, who replied that he would not permit the load of fertilizer to be carried to her lot, and that the rules of the park and tree commission did not permit the purchase of fertilizers by the owners of lots from any one else than the park and tree commission. The chairman of the park and tree commission then ordered his agent to send the load of fertilizer from the cemetery, which was done. Thereupon Mrs. Moore through her attorney made a request to the park and tree commissioners of Savannah for permission to purchase material needed for use upon her lot, and for permission to employ a competent agent to place such material upon her lot and do the work desired by her upon the lot. The response to this request was conveyed in the form of a resolution of the commissioners, to wit: "Resolved, that Mr. D. C. Barrow, attorney for Mrs. Mary N. Moore, be informed that his letter has been received and placed before the commission, and that we are compelled to refuse his client's request, and call attention to the rule adopted by the Park and Tree Commission, copy of which is herewith furnished, and to say that we will not give written authority to your client to employ a professional gardener or other person for hire, as we are in position to furnish such material or to perform such work as she may require, at a lesser figure than she could employ outside help." Thereupon Mrs. Moore filed a petition setting forth the foregoing facts, and further alleging that when the lot was purchased from the Evergreen Cemetery Company of Bonaventure that corporation had no by-laws, rules, or regulations prohibiting lot-owners from purchasing any material they considered necessary upon their lots for the cultivation of plants, flowers, and shrubs, or to employ a skillful and competent person to care for and work upon the lot, but, on the contrary, the cemetery company authorized and permitted lot-owners to purchase materials from any one they selected, and authorized and permitted them to employ any skillful and competent person to care for and work upon the lots. She alleged that she had contracted with a named florist, who was competent and skillful, to do certain work and beautify her lot, and had purchased from him fertilizers needed upon her lot in order to put and keep the same in proper

condition, but that she was prohibited by the park and tree commission from having her contract executed; and she prayed that they may be enjoined from interfering with her employment of competent and skillful agents in the proper improvement of her lot, in placing fertilizer and material thereon, and doing work thereon. The petition was dismissed on demurrer, and the plaintiff excepted.

1.    One who purchases a lot in a public cemetery for burial purposes, though the right of interment therein be exclusive, does not acquire any title to the soil, but only an easement or license for the use intended.    *Stewart* v. *Garrett,* 119 *Ga.* 386 (46 S. E. 427, 64 L. R. A. 99, 100 Am. St. R. 179); *Jacobus* v. *Congregation etc.,* 107 *Ga.* 518 (33 S. E. 853, 73 Am. St. R. 141).    The rights of burial are so far public that the right of exclusive interment is subject to the reasonable police regulations of the association or corporation having charge of the cemetery.    Edwards *v.* Stonington Cemetery Association, 20 Conn. 466.    Undoubtedly the municipality of the City of Savannah, acting through its park and tree commission, had the right to make reasonable rules and regulations respecting the care, management, and protection of the cemetery.    When the plaintiff acquired ownership of her easement there was no rule or regulation passed by the Evergreen Cemetery Company of Bonaventure, nor did it promulgate any such rule or by-law, forbidding lot-owners to employ competent and skillful persons to assist them in the care of their lot.    After the City of Savannah became the owner, the municipal authorities in effect held the fee in trust for the purposes for which the corporation from whom they purchased was organized.    It would seem clear that the owner of a burial lot would have the right of personal superintendence, so long as that superintendence did not work to the injury of the cemetery or other lot-owners.    If the lot-owner had the personal right to work upon her lot, as the rule of the park and tree commission concedes, we can see no reason why she would not have the right to have the work done by a competent and skillful person of her own choosing.    The park and tree commission would have the right to pass any reasonable rule affecting the improvements in the lots; but it would seem to pass beyond the region of legitimate regulation to require of a lot-owner that she buy her fertilizer from the park and tree commission, and that no work would be permitted by a gardener of her selection, however capable, and how-

ever properly the work may be done. Ashby *v*. Harris, L. R., 3 C. P. 523, 18 L. T. 719; Silverwood *v*. Latrobe, 68 Md. 620 (13 Atl. 161). The rule of the park and tree commission, on its face, seems to be within the sphere of legitimate regulation. It does not forbid a lot-owner from employing any competent person to care for the lot, but requires that the written consent of the commissioners be obtained. Under this rule the commissioners would have no right to arbitrarily withhold consent to the employment of a suitable person by a lot-owner to care for her lot. Of course they could impose reasonable regulations respecting the time of work, and such other requirements as would tend to the protection of the cemetery and other lot-owners. In their resolution the commissioners arbitrarily refused to allow the plaintiff to employ any person for hire, irrespective of his competency to do the work and of the nature of the work to be done, and they undertook further to require that all material be furnished by them, as well as the necessary labor, and based their refusal on their ability to furnish cheaper service. We think the action of the board, as contained in their resolution, amounted to an arbitrary refusal to consent to the employment of any agent by the plaintiff to work upon her lot, or to the use of any material not purchased from the park and tree commission. We therefore think that the commission acted arbitrarily in the matter.

2. The order of the judge dismissing the petition was as follows: "The remedy of the plaintiff, if any there be, is not by injunction; and the demurrer is therefore sustained and the petition dismissed." We think the remedy by injunction was appropriate to the facts of the plaintiff's case. She was informed by the park and tree commission that they would not permit her to bring into the cemetery for use upon her lot any fertilizer, irrespective of its innocuous character. She was also informed that she could not employ a competent and skillful gardener to look after and care for her lot, but that she would have to accept service from the commission. The park and tree commission are in charge of the cemetery, and are in position to enforce their demand. It seems to us that the plaintiff has pursued the proper remedy to assert her rights pertaining to the ownership of her lot.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*