## EX PARTE ELLA ADLOF.

### No. 5000.   Decided May 29, 1919.

### Rehearing denied October 22, 1919.

1.—Habeas Corpus—City Charter and Ordinance—Cemetery Regulations—Caption.

The contention of relator that the caption of the ordinance states a double purpose, is not sound;  this is emphasized by the fact that the rules testing the constitutionality of statutes in this particular are not generally applied to ordinances.  Following Morris v. State, 62 Texas 728, and other cases.  Nor is the power of municipal bodies under a legislative authority to adopt reasonable regulations with reference to public cemeteries questioned, and like other police regulations are tested by their reasonableness.  Following Austin v. Austin City Cem. Assn., 87 Texas 330, and other cases.

2.—Same—Police Regulations—Harmless Avocation—Public Health.

It is true also that police regulations affecting the conduct of legitimate occupations have often been upheld, but the legislative authority thereby to prohibit a useful and harmless avocation is denied, this relates to cemeteries, the regulations of which are sustained upon the view that their enactment is to preserve the public health, etc.

3.—Same—Rule Stated—Right of Sepulture—Cemetery Regulations—Agent.

There is some distinction that must be noted with reference to the right of sepulture in a cemetery established and maintained by municipal authority and such right as modified by private contract, but applicable to both is the rule that a cemetery is a place set apart for the interment of the dead, and the term includes not only lots for depositing the dead, but avenues, walks, and grounds for shrubbery and ornamental purposes, and the right of entering the grounds under reasonable restrictions, etc., is accompanied by the right to care for the graves subject to like reasonable regulations, and this case does not require the personal attention of those in whom it inheres but may be performed by an agent.

4.—Same—Principal and Agent—Case Stated—City Ordinance—Cemetery.

Where the relator was convicted upon complaint for digging, attending and keeping the grave and burial lot of her principal, for compensation, without the consent of the superintendent of the city cemetery, relator not being the owner of the lot nor related to the persons buried therein, held, that said owner and principal of the relator, having the right of sepulture, possessed the privilege of keeping and attending said grave and burial lot, observing all reasonable regulations, etc., and that said privilege carried with it the authority to employ another to do therein the things that the owner might lawfully herself do.

5.—Same—Ordinance—City Cemetery—Arbitrary Regulations.

Where the city ordinance and conviction of relator thereunder are based upon the theory that the privilege of the owner of the burial lot to attend it might be lawfully restricted to personal attention, and that the right to do so by an agent might be arbitrarily denied by the superintendent of the cemetery, said ordinance and the conviction thereunder are void and relator is entitled to her discharge.

**6.—Same—City Ordinance—Cemetery—Principal and Agent.**

Where the city ordinance fixed no standard of compensation to the superintendent, nor rule to determine what is required to obtain his consent to attend the burial lot of the principal through an agent, the same was void, as the principal having the right of sepulture desiring to mark or beautify the grave of one to whom he is drawn by ties of respect, kinship, etc., may exercise this privilege either in person or by an agent of his own selection, who observes the cemetery regulations.

**7.—Same—Title to Cemetery Lot—Easement—Right of Sepulchre.**

It is not denied that it must be assumed that the title of the principal in the cemetery lot was not that of a holder of realty in fee simple, but that it extended only to confer upon her a right of sepulchre, which is an easement in rather than ownership to the land, but the question in the instant case is the validity of the regulations concerning the care and improvement of cemetery lots.

**8.—Same—Unreasonable Restriction—Principal and Agent.**

Where the city ordinance in question placed no restriction upon the privilege of one having the right of sepulchre to attend the lot in which he is interested in person, or through an unpaid agent, and the restriction takes place in consequence of the agent being a compensated one, and not one acting gratuitously, the same is unreasonable and void. Following Silverwood v. Latrobe, 13 Atlantic Rep., 161.

**9.—Same—City Charter and Ordinance—Uniform in Application, When.**

Where the city ordinance was enacted under the general law, which was ample to authorize the enactment of reasonable regulations for the government of a public cemetery, the enforcement of the Penal Clause therein must be tested by the rules of law governing that character of enactment as to its validity, and such power can lawfully be exercised only when the ordinance is uniform in its application to persons of the same class and is not oppressive or unreasonable.

**10.—Same—Ordinance Not Uniform in its Application—Void.**

Where the city ordinance conferred the power upon a subordinate officer charged with its administration, to arbitrarily discriminate against one lot owner and in favor of another, and required that no person shall dig, attend, dress or keep any grave or burial lot in said cemetery for compensation paid or to be paid, except under the direction and with the consent of the superintendent, who may arbitrarily withhold his consent to the services by the agent of a lot owner, etc., the same is unreasonable and void.

**11.—Same—Collateral Attack—Judgment—Presumption of Validity.**

The rule is well established that the presumption of validity is to be indulged in favor of the judgment of conviction, and cannot be collaterally attacked, unless the judgment is void, but where under the city ordinance no defense was available to the relator on the trial in which she was convicted, and it appeared from the record that said ordinance under which relator was convicted was oppressive, unreasonable and void, she had the remedy of the writ of habeas corpus and is entitled to her discharge.

Appeal from the County Court of Grayson. Tried below before the Hon. Dayton B. Steed, judge.

Appeal from a habeas corpus proceeding asking release from a judgment of conviction in the County Court, assessing a penalty of

one dollar, for a violation of a city ordinance imposing regulations with reference to the cemetery of said city.

A complaint was filed in the Recorder's Court of the city of Sherman, Grayson County, Texas, on the 24th of April, 1917, charging relator with a violation of a city ordinance relating to the public cemetery. Relator was fined one dollar and thereupon appealed to the County Court of said county and was again fined one dollar in said County Court, and was thereafter arrested on a *capias profine,* and refusing to pay the fine was held in custody, and the judgment being one from which there was no appeal to the Court of Criminal Appeals, relator filed an application for a writ of *habeas corpus* before the County judge of said county, who after a hearing remanded her to custody from which order of the County Court relator appealed to the Court of Criminal Appeals.

*B. F. Gafford,* for relator.—On question of caption of ordinance: Holman v. Cowden, 158 S. W. Rep., 571; Ex parte Fagg, 38 Texas Crim. Rep., 573; Giddings v. San Antonio, 47 Texas, 548, National Live Stock Co. v. Gommillion, 178 S. W. Rep., 1050; National Surety Co. v. Murphy Walker Co., 174 S. W. Rep., 100.

On question of invalidity of ordinance: Ex parte London, 73 Texas Crim. Rep., 208, 163 S. W. Rep., 968; Ex parte Savage, 63 Texas Crim. Rep., 285; Brenham v. Water Co., 67 Texas, 542; Altgelt v. San Antonio, 81 id., 436; Middleton v. Texas Power & Light Co., 178 S. W. Rep., 956; G. C. & S. F. Ry. Co. v. Fuller, 63 Texas, 467; Ex parte Battis, 40 Texas Crim Rep., 112; Ex parte Epperson, 61 Texas Crim. Rep., 237; Taylor v. Doon, 80 Texas, 652; House v. Houston Water Co., 88 id., 233; Galveston Ry. v. Galveston, 90 id., 398; Yick Wo v. Hopkins, 118 U. S. 356, and cases cited in the opinion.

*Hamp P. Abney, Head, Dillard, Smith, Maxey & Head,* for the respondent.—On question of collateral attack: Ex parte Bizzell, 21 Southern Rep., 371; Ex parte Naill, 59 Texas Crim. Rep., 140; Ex parte Thomas, 65 id., 537; Ex parte Long, 77 Texas Crim. Rep. 430, 179 S. W. Rep., 567.

On question of title: New York Bay Cemetery Co. v. Buckmaster, 9 Atl. Rep., 591; Pitcairn v. Homewood Cemetery, Co., 77 Atl., 1105; Stewart v. Garrett, 119 Ga., 386.

On question of validity of ordinance: City of Austin v. City Cemetery Association, 87 Texas, 330; Los Angeles v. Hollywood Cemetery Association, 124 Call., 344; Old Fellows Cemetery Ass'n. v. City and County of San Francisco, 140 Call., 226; Roanoke Cemetery v. Goodwin, 44 S. E. 769.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, Judge.—The governing body of the city of Sherman enacted an ordinance of which Sec. 3 is as follows:

"That if any person whomsoever shall hereafter dig, attend, dress or keep any grave or burial lot in West Hill Cemetery in the City of Sherman for compensation, paid or to be paid, directly or indirectly, except under the direction and with the consent of the Superintendent of said Cemetery to be appointed as provided by this ordinance, he shall be guilty of a misdemeanor and upon conviction thereof shall be fined not less than one dollar nor more than ten dollars. Provided, that nothing in this ordinance shall prevent the owner of any lot, or the relative within the third degree of any person buried in any lot in said Cemetery, from doing work upon or connected with any such lot."

The relator is under conviction for violation of the ordinance and seeks release on original application for *habeas corpus,* claiming that the ordinance is void. The caption of the ordinance is as follows:

"An ordinance providing for the proper care of West Hill Cemetery, making it a misdemeanor for persons other than employees of the City of Sherman to do any work therein for the purpose of digging graves or dressing and keeping the lots therein. And prescribing a penalty therefor."

We are of opinion that the criticism addressed to the ordinance, based on the view that the caption states a double purpose, is not sound. This conclusion is emphasized by the fact that the rules testing the constitutionality of statutes in this particular are not generally applied to ordinances. Morris v. State, 62 Texas, 728; Dillon on Mun. Cor., Secs. 72 and 577; Craddock v. City of San Antonio, 198 S. W. Rep., 634. The power of municipal bodies under legislative authority to adopt reasonable regulations with reference to public cemeteries is not to be questioned. Ruling Case Law, Vol. 5, p. 239, and cases cited. Their validity, like other police regulations where not exceeding constitutional limitations, is tested by their reasonableness as applied to the subject to which they relate. Austin v. Austin City Cem. Assn., 87 Texas, 330; note, Sutton v. Finley, Am. & Eng. Ann. Cas., 1917-B, p. 563; not, Womberly v. Womberly, 3 L. R. A. (N. S.), 481. It is true also that police regulations affecting the conduct of legitimate occupations have often been upheld, but the legislative authority thereby to prohibit a useful and harmless avocation is denied. Tiedeman on Lim. Police Power, Sec. 102; Freund on Police Power, Sec. 492. Wyeth v. Cambridge Board of Health, 200 Mass., 474, 23 L. R. A. (N. S.), 147, is one giving application of this rule to avocations relating to cemeteries. Regulations upon the subject are sustained upon the view that their enactment is to preserve the public health. 6 Cyc., 708.

In considering the decided cases there is some distinction that must be noted with reference to the right of sepulture in a cemetery established and maintained by municipal authorities and such

right as modified by private contract. See Am. & Eng. Ency. of Law, Vol. 5, p. 785 and p. 789; Corpus Juris, Vol. 11, p. 62; Houston Cemetery Co. v. Drew, 13 Texas Crim. App., 536, 36 S. W. Rep. 802. We believe the following definition applicable to both, it may be said: "A cemetery is a place set apart either by municipal authority or private enterprise for the interment of the dead. The term includes not only lots for depositing the bodies of the dead but also avenues, walks and grounds for shrubbery and ornamental purposes." Evergreen Cemetery Assn. v. New Haven, 43 Conn., 234, 21 Am. Rep., 643; Creig v. First Pres. Church, 32 Am. Rep., 417; Ruling Case Law, Vol. 5, p. 234. Our statute relating to cemetery corporations, Chap. 23, Title 25, Sayles' Texas Civ. Stats., Vol. 1, in Art. 1294 declares that the board of directors shall have authority to make reasonable rules requiring lot owners to keep their lots clean from improper growth so as to preserve good order and proper appearance of the grounds, but shall not have power to require of any lot owner a particular character of improvement thereon. All expressions from the courts, as far as they have come to our notice, seem to recognize the fact that a cemetery is not only a place where the dead may be buried, but it is also one in which the living may give expression to their affection and respect of the dead by marking and decorating the place of interment and beautifying its surroundings. In other words, the right to enter the grounds for the purpose of burying the dead under reasonable restrictions and regulations is accompanied by the right to care for the grave subject to like reasonable regulations. Neither of these rights, however, in our opinion, are such as require the personal attention of those in whom they inhere. The correct principle, we think, is stated by one of the appellate courts of the State of Illinois in the opinion of Ritchey v. Canton 46 Ill., App., 187, as follows.

"One of these rights is the privilege of interring therein the bodies of her dead by her own hand, if she likes, or by the hand of such sympathetic neighbors or friends as may volunteer their services, or by whom she may employ for that purpose. The city may by ordinance establish such regulations concerning the manner of digging the grave, its depth, etc., and the interment, as are reasonable in their character and necessary for the protection of the public health and welfare, and she or those who make the grave for her must conform to such regulations. Her right, however, to make a grave in her own lot and inter therein the body of her deceased daughter cannot, by ordinance, be made dependent upon the permission of the city sexton, nor can he claim by virtue of the ordinance exclusive right to make the grave for her, even for reasonable compensation. The appellant was acting at the request of Mrs. Rush, and as she might lawfully do by another that which she might lawfully do herself, he cannot be held amenable to an ordinance that was not effective as to her."

2—68 T. C. R.

Touching an ordinance in some respects similar to the one in question, we are referred by respondent to the case of State v. Scoville, 61 Atl. Rep., 63, which tends to support the theory of the validity of the terms of the ordinance in question. It is illustrative, however, of the fact that the decisions of courts upon the subject are not in complete harmony. The New York case of Johnston v. Parker, 59 N. Y. Sup., 821, and 60 N. Y. Sup., 1015, passed on and held invalid an ordinance in practically the same terms as the one in question, and one quite similar was held unreasonable by the Supreme Court of California in the case of Los Angeles v. Hollywood Cemetery Assn., 71 Am. St. Rep., 75. Others in line are Silverwood v. Latrobe, 13 Atl. Rep., 161, and State v. Chicago, 64 Am. St. Rep., 482.

It was charged against relator that she did dig, attend and keep the grave and burial lot of Mrs. A. C. Gutecase for compensation without the consent of the superintendent, she, relator, not being the owner of the lot nor related to the persons buried therein. The owner of the lot, Mrs. Gutecase, having the right of sepulture, possessed the privilege of keeping and attending the grave and burial lot, observing all reasonable regulations with reference to the character of the work done, and the possession of such privilege carried with it the authority to employ another to do therein the things that she might lawfully herself do. There is no complaint that relator, in the performance of the work, was transgressing any reasonable regulation with reference to its charter, or was doing anything that might not have been lawfully done by the owner. The ordinance and conviction are based upon the theory that the privilege of the owner of the lot to attend it might be lawfully restricted to personal attention, and that the right to do so by an agent might be arbitrarily denied by the superintendent of the cemetery. The ordinance fixes no standard of compensation to the superintendent, nor rule to determine what is required to obtain his consent to attend the lot through an agent. We believe that one having the right of sepulture, desiring to mark or beautify the grave of one to whom he is drawn by ties of respect, kinship, or sympathy, may exercise the privilege of responding to these sentiments either in person or through the agency of another of his own selection, observing always the reasonable regulations as to the character of the means used in the care of the grave of his dead, and the agent performing this service being engaged in a useful and harmless avocation and performing an act which his principal had the lawful right to perform, cannot be made subject to a penalty therefor.

The relator is discharged.

*Relator discharged.*

PRENDERGAST, Judge (dissenting).—I believe said ordinance is clearly valid.

October 22, 1919.

MORROW, JUDGE.—In a very able motion for rehearing, the correctness of the view of the court expressed in the original opinion is challenged. Our views do not conflict with those of appellant on the point that we must assume that the title of Mrs. Gutecase in the cemetery lot was not that of a holder of realty in fee simple, but that it extended only to confer upon her a right of sepulture, which is an easement in rather than ownership to the land. Nicholson v. Daffan, 142 Georgia, 729; L. R. A., 1915-E, page 168 and notes Many of the authorities cited by the appellant relate to regulations of burials and cemeteries under that phase of the police power whereby cities are authorized by the Legislature to protect the public health. Among these are: The City of Austin v. Austin Cemetery Association, 87 Texas, 330, and Annotations, Rose's Notes on Texas Reports, vol. 4, page 569; Waldron's Petitions, 67 L. R. A., 118; Cemetery Association v. San Francisco, 27 L. R. A. (New Series), 260.

The subject here under consideration relates to the validity of regulations concerning the care and improvement of cemetery lots.

The penal clause of the ordinance is quoted in the original opinion. Section 4 of the ordinance contains the following:

"The owners of lots in said cemetery who may hereafter desire that the same be kept or attended shall pay to the City Manager, or to such person as may be designated by him, such sum as may be agreed upon by such owner and either the City Manager or the superintendent of Westhill Cemetery." This provision, construed in connection with others in the ordinance, indicates that by its terms the ordinance permits the owner of any lot or the relative within the third degree or any person buried in any lot in said cemetery to do work upon any such lot or to cause work to be done thereon through the instrumentality of an agent, without obtaining the consent of the superintendent, provided the agent selected receive no compensation for his service. By the ordinance, as we understand it, no restriction is placed upon the privilege of one having the right of sepulture to attend the lot in which he is interested in person or through an unpaid agent. The restriction takes place in consequence of the agent being a compensated one and not one acting gratuitously; and the legal question, as we conceive it, is whether this restriction is as a matter of law an unreasonable one.

The complaint charges that the relator did "dig, attend, and keep the grave and burial lot of Mrs. A. C. Gutecase, situated on the north half of Lot 5, Block 56, in West Hill Cemetery in the City of Sherman, for compensation paid and to be paid." It charges that this was done without the consent of the superintendent, was not

under his direction, that the relator was not the owner of the lot nor a relative of any person buried therein, and that the owner of the lot had not paid the City Manager or any person designated by him any sum or sums of money theretofore agreed upon by such owner and the said Manager or the superintendent of said cemetery. We think that one of the attributes of the right of sepulture in a cemetery lot is the right in person or by another to visit and care for it. While the decisions of the court from which this principle is deduced deal with varying questions of fact, as we understand them they are uniform in recognizing the principle. One of the earliest cases at hand is Silverwood v. Latrope, by the Supreme Court of Maryland, reported in the 13 Atlantic Reporter, 161. This was a Civil case, and its final disposition turned upon a question of estopple by contract. It related to a controversy over rights in a cemetery lot, and from it we take the following quotation:

"Nothing is clearer than that if a man, in the transaction of his own business, has a right to do any act, he can perform it by the hands of his agent. The general maxim, as old as our system of jurisprudence, is that whatever a man *sui juris* may do of himself he may do by another, Co. Litt., 258. Had not this principle been always recognized, it is difficult to perceive how the multiform transactions of mankind could have been successfully conducted. The maxim, *qui facit per alium facit per se*, carries with it, by implication, a recognition of the right of every man, unless exercising certain delegated powers, and acting in a fiduciary capacity, to employ an agent in the transaction of his business. Therefore, when, by the terms of a deed or other instrument, a man has a right to do a certain thing, he can do it either with his own hands or by the hands of an agent, and if the agent is interfered with by the grantor, it is an interference with the rights of the grantee."

The case of Graves v. Bloomington, 67 Ill. 495, is one in which the superintendent of a public cemetery—governing which there was an ordinance prohibiting entry into the grounds after certain hours—was convicted of an assault on having ejected from the grounds a person who was there attending the grounds as the agent of an owner of a lot. In the decision it was said:

"The charter of the Association was produced, from which it is claimed that the Association is a purely private corporation, and that it may exclude any and all persons at pleasure. Granting that the character confers a private franchise, yet we think the use made of it must necessarily impress it with a public character in some degree. When lots are sold for burial purposes, the purchaser acquires the right to visit same and to improve and care for them. This may be done in person or by agent."

In the case of Nicholson v. Daffen, 142 Georgia, 729, a controversy in a civil suit over the rights of the owner of a right of sepulture, acquired while the cemetery belonged to a private corporation, it

having subsequently come under municipal ownership, it is said "it would seem clear that the owner of a burial lot would have the right of personal superintendence so long as that superintendence did not work to the injury of the cemetery or other lot owners. If the lot owner had the personal right to work upon her lot, and as the rule of the Park and Tree Commission concedes, we can see no reason why she would not have the right to have the work done by a competent and skilful person of her own choosing. The Park and Tree Commission would have the right to pass any reasonable rule affecting the improvements in the lots; but it would seem to pass beyond the region of legitimate regulation to require of a lot owner that she buy her fertilizer from the Park and Tree Commission, and that no work would be permitted by a gardner of her selection, however, capable, and however proper the work may be done." Ashby v. Harris, L. R., 3 C. P., 523, 18 L. T. N. S., 719, 37 L. F. Mag. Cas. N. S., 164, 16 Week Rep., 869.

It is not claimed that the charter of the city of Sherman contains any express provision supporting the ordinance, but that the power to enact it exists under its general power conferred in its charter adopted under Chapter 147, Acts of the Thirty-third Legislature, which we regard as ample to authorize the enactment of reasonable regulations for the government of a public cemetery. See Ruling Case Law, Vol. 5, p. 239. The city, however, seeking to enforce its will by a penal ordinance, its validity must be tested by the rules of law governing that character of enactment. If it be conceded that the city might rightfully abridge the common right of lot owners so that they might not act through an agent, the power could be lawfully exercised only by an ordinance uniform in its application to persons of the same class, certain and definite in its terms, and not oppressive and unreasonable. See Ruling Case Law, vol. 19, pp. 805 to 809. As we conceive it, the ordinance in question is not uniform in its application to all owners of lots, but that by its terms it confers the power upon the subordinate officers charged with its administration, to arbitrarily discriminate against one lot owner and in favor of another. "No person," says the ordinance; "shall dig, attend, dress or keep any graves or burial lot in West Hill Cemetery for compensation paid or to be paid except under the direction and with the consent of the superintendent." The ordinance does not point out what must be done in a given case to entitle the owner to the consent of the superintendent, that his paid agent may do in the cemetery acts that he might lawfully do himself. It does not indicate that the superintendent must give any reason for his refusal to consent, but renders one who performs services without his consent subject to a criminal penalty. No owner, says the ordinance, shall through his paid agent attend his lot or bury his dead unless he pays the city manager or the superintendent such sum of

money as may be agreed upon. The ordinance fixes no measure of compensation to the superintendent, it does not even say that his charge shall be reasonable, nor does it require that his charge for the same service to different persons be uniform. He is made the arbiter of the amount that shall be charged; is not only the terms of the ordinance required to limit it to a reasonable charge; and may arbitrarily withhold his consent to the services by the agent, even though the owner may be willing to pay both the superintendent and the agent. On this general subject we quote from the text, page 813, vol. 19, Ruling Case Law, as follows:

"It is clear that if an ordinance is passed by a municipal corporation which upon its face restricts the right of dominion which the individual might otherwise exercise without question, not according to any general or uniform rule. but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the governing authorities of the town or city, it is unconstitutional and void, because it fails to furnish a uniform rule of action and leaves the right of property subject to the despotic will of the municipal officers, who may exercise it in accordance with some principle which it would not be within the constitutional power of the state to sanction or even so as to give exclusive profits or privileges to particular persons."

Many of the authorities are cited in support of the text under note 5, among them Yick Wo. v. Hopkins, 118 U. S. Supreme Court, 358; 30 Law Edition, 220.

An ordinance of the character mentioned is regarded as unreasonable and void upon the ground that it is oppressive, in the text of Dillion on Municipal Corporations, vol. 2, Sec. 592, Specific instances in which ordinances violating the principle named above held invalid, will be found in Baltimore v. Radechke, 49 Maryland, 217; Cicero Lumber Co. v. Cicero, 176 Ill., 9; Richmond v. Dudley, 129 Indiana, 112; Elkhart v. Murray, 165 Indiana, 304; Hagerstown v. Baltimore & Ohio Ry. Co., 107 Maryland, 178; Commonwealth v. Malatsky, 203 Massachusetts, 241; New Weberim v. McCann, 105 Tennessee, 159. The arbitrary power vested in the superintendent of the cemetery in the present ordinance we think classifies it as unreasonable and void upon the application of the principle stated; and we regard it as our duty to so declare it. See Encyclopedia of Law and Procedure, vol. 28, pages 368 and 369; Ex parte Battis, 40 Texas Crim. Rep., 112.

The appellee suggests that this proceeding, being a collateral attack upon the judgment of conviction, the presumption of validity is to be indulged in favor of the judgment. This rule is well established. It is only a void judgment that may be so attacked. See Ex parte McKay, 82 Texas Crim. Rep., 221, 199 S. W. Rep., 638.

The appellant's principal is recognized in the prosecution as a lot owner in the cemetery, and appellee contends that on the trial

in the County Court it may have been proved that there were restrictions in her deed which would have rendered the judgment valid. We conceive of no restriction which would have justified the passage of an ordinance which would confer upon the superintendent of the cemetery the arbitrary power which it conferred upon him in the one in question; and conceding that the relator, acting for her, attended the grave upon the lot of Mrs. Gutecase without the consent of the superintendent, we are aware of no defense that would have been available to her on her trial. If the ordinance is valid, the fact that the relator performed the work for hire without the consent of the superintendent would conclude the case against her. It would be futile for her to urge upon the trial that she was a proper person to perform the work, sought to perform it within the proper hours, was able and willing to submit and conform to the direction of the superintendent, that she was skilful and willing to observe all proper regulations with reference to the manner in which the work was to be done. It occurs to us that the purpose of the ordinance was not to preserve the symmetry and beauty of the cemetery, and to insure order and system and skill in the performance of work therein. This we infer from the fact that under the terms of the ordinance, relator, without obtaining the consent of the superintendent, would have been permitted to do the work that she was doing provided only she was doing it gratis and not for compensation.

After the most painstaking and careful consideration of. the motion for rehearing of which we are capable, we are not able to coincide with the views of the appellee. We therefore adhere to the conclusion that the judgment should be reversed and the relator discharged. The motion for rehearing is overruled.

*Overruled.*