FRANK P. SILVIA *et al. vs.* MARY HELGER.

JUNE 17, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This is a bill in equity seeking a mandatory injunction ordering the respondent to remove the body of her grandchild from a cemetery lot and restore the lot to its original condition. The cause was heard in the superior court on bill and answer, and from a decree denying and dismissing the bill the complainants have duly prosecuted their appeal to this court.

The bill alleges that the complainants, the respondent and Joseph Silvia and Jesse Silvia are brothers and sisters, and all the children and heirs at law of Frank Silvia, deceased. Joseph Silvia and Jesse Silvia are not parties to this cause. The bill further alleges that said Frank Silvia purchased lot No. 165 in the Pocasset Hill Cemetery in the town of Tiverton in this state by deed dated August 7, 1899; that upon his death title to the lot descended to his children as tenants in common; that on or about April 1, 1946, the respondent, without the knowledge or consent of the com-

plainants or of Joseph and Jesse Silvia, buried in said cemetery lot, in violation of the rights of the complainants, one "Baby Vaz," a grandchild of the respondent and great-grandchild of Frank Silvia.

Complainants rested their case on the sworn bill and the respondent presented no evidence in opposition thereto. It appears therefore that the complainants, the respondent and Joseph and Jesse Silvia held the cemetery lot upon the death of their father as tenants in common. It is a well-recognized rule of law that one tenant in common may make any reasonable use of the land held, so long as it does not operate to exclude the other tenants from enjoying their equal privileges. But in the case of a cemetery lot, while a single owner may permit the interment of a relative or even a stranger therein, where there are two or more owners no one of them has that right; it would require the consent of all. *Lewis* v. *Walker's Exrs.*, 165 Pa. 30. So long as the land is used for burial purposes, the owner cannot exercise the same rights of ownership as in other real estate. *Gardner* v. *Swan Point Cemetery*, 20 R. I. 646.

In *Waldron, Petitioner*, 26 R. I. 84, the court said that "a burial lot does not pass under a general residuary devise, but it descends to the heirs as intestate property. It is a family burial lot. It is that fact alone which gives a peculiar limitation to its tenure. The heir takes it subject to all the conditions for which the ancestor held it. A sort of trust attaches to the land for the benefit of the family."

In the instant cause there is no evidence before us as to the size of the burial lot nor as to how many bodies may be interred therein. Since the heirs take such lot subject to all the conditions for which the ancestor held it, the tenants in common would hold it with the right to be buried therein in the order in which they deceased, provided there was burial space still available. If the lot were not sufficiently large, the last members of the family to die would thereby lose their right to be buried therein.

This is one of the incidents attaching to their inheritance of a lot dedicated to burial purposes.

It would follow, therefore, that if one of the cotenants, without the consent and approval of the others, had placed in the burial lot the body of a stranger or even a relative, such action might deprive one of the other owners of a place of burial therein to which he or she might otherwise be entitled. In such circumstances if objection had been made by any one of the cotenants before burial had actually taken place, a court of equity could properly enjoin such burial. But after burial there is a marked reluctance on the part of courts to remove bodies that have once been suitably buried.

In 17 C. J. 1139, §7, the rule is set forth as follows: "Except in cases of necessity or for laudable purposes the policy of the law is that the sanctity of the grave should be maintained, and that a body once suitably buried should remain undisturbed." At page 1140 the principle of law is further stated in the following language: "There is a distinction between the rights existing prior to burial, and those after burial, because after its interment the body is in the custody of the law, and a disturbance of its resting place and its removal is subject to the control and direction of a court of equity in any case properly before it. The right to have a dead body remain unmolested is not an absolute one; it must yield where it conflicts with the public good or where the demands of justice require such subordination. A court will not, however, order a body to be disinterred unless there is a strong showing that it is necessary and the interests of justice require it."

In *Fox* v. *Gordon,* 16 Phila. Reports 185, the court in discussing the law relating to removal of buried bodies uses the following language at page 186: "If a dispute arises about it among relatives, as in the present case, it must be determined by principles of equity and such considerations of propriety and justice as arise out of the particular circumstances of the case. No general rule to be applied

absolutely in all cases can be laid down upon the subject, for what is fit and proper to be done in each case must depend upon the special circumstances of that case. It is a jurisdiction which belongs to equity, and the chancellor will exercise it with great care, having regard to what is due to the natural feelings and sensibilities of individuals as well as to what is required by considerations of public propriety and decency."

In *Gardner* v. *Swan Point Cemetery, supra,* the court, at page 648, stated the rule in the following language: "The principle of all the cases seems to be that the buried body shall remain undisturbed, and that the right and duty falls to the next of kin to see that its repose is duly protected. This right '*after burial,*' was referred to in *Hackett* v. *Hackett,* 18 R. I. 155, as one to be distinguished from right of custody and disposal of the body at the time of burial, when other considerations than kinship may often arise."

In the instant cause the body of the grandchild has already been interred in the burial lot by her grandmother, the respondent, one of the owners in common. The baby is not a stranger in blood to any of such owners of the lot involved herein. The respondent as one of the owners thereof also would have the undoubted right to burial therein provided there was sufficient space remaining at the time of her death. It is possible, however, that the interment of the baby's body might deprive some one of the complainants or Joseph or Jesse Silvia from being buried in that lot if the respondent should also insist on the burial of her own body therein. In the circumstances and on the authority of the cases and citations above referred to we are of the opinion that the body of the baby should not be removed. But we are also of the opinion that the respondent's failure to remove, during her lifetime, the body of her grandchild from the family burial lot shall be deemed an election on her part to have the baby's body remain in the lot in place of having her own body interred therein, and unless consented to by the surviving owners the keeping

of the baby's body in that lot shall constitute a waiver of any absolute right the respondent otherwise would have had to the burial of her own body in the cemetery lot owned by her in common with her brothers and sisters.

The complainants' appeal is sustained in part, and on July 6, 1949 the parties may present for our approval a form of decree, modifying the decree appealed from in accordance with this opinion, to be entered in the superior court.

*Sheffield & Harvey, W. Ward Harvey,* for complainants.

*Burdick, Corcoran & Peckham, Patrick O'N. Hayes,* for respondent.