WILLIAM L. MILLS, JR., ON BEHALF OF HIMSELF AND OTHER OWNERS OF BURIAL LOTS IN CAROLINA MEMORIAL PARK, v. CAROLINA CEMETERY PARK CORPORATION AND GAMALIEL COATS SMITH HUGENSCHMIDT.

(Filed 13 April, 1955.)

1. **Cemeteries § 4—**

   After interment, a body is in the custody of the law, and the courts will take cognizance of the profound sentiments and instincts of humanity that the dead rest in uninterrupted repose and will not order a body to be removed except for compelling reasons.

2. **Same—**

   Plaintiff alleged that the defendant cemetery had permitted the individual defendant to bury her deceased husband in a granite tomb above the ground in a section of the cemetery reserved solely for underground sepulchers, and sought by injunction to compel the defendants to remove the body from the tomb. *Held:* The complaint fails to allege any compelling reasons upon which equity could grant the relief sought, and defendants' demurrers to this cause of action should have been sustained.

**3. Injunctions § 4g—**

The practice of law without a license is a criminal offense, with adequate legal remedy by indictment against a person or corporation practicing law without license, and therefore, injunction will not lie to restrain the unauthorized practice of law.

**4. Fraud § 9—**

Allegations that defendant cemetery had delivered deeds for burial lots stamped as having been recorded when in fact the deeds had not been recorded, and that such action was willfully and fraudulently intended to keep the owners from having their deeds recorded, *held* insufficient to state a cause of action for fraud.

**5. Cemeteries § 2—**

The owners of lots or burial rights in a cemetery have the right to demand that the rules and regulations of the cemetery be uniform and reasonable, and an owner of a lot or burial interest may maintain an action in behalf of himself and others having a like interest to enjoin the enforcement of unlawful and unreasonable regulations promulgated by the cemetery.

**6. Same—**

In an action to enjoin the enforcement of unreasonable regulations promulgated by a cemetery corporation, plaintiff must allege plainly and precisely the rules and regulations he contends are unlawful and unreasonable, and allegations that the rules and regulations adopted by the corporate cemetery set out in the complaint and still others not set out, are unlawful and unreasonable, are insufficient to state a cause of action for injunction, but constitute a defective statement of a good cause of action.

**7. Pleadings § 3a—**

If plaintiff seeks to recover in one action on two or more causes of action, each cause must be separately stated. Rule of Practice in the Supreme Court No. 20 (2).

**8. Cemeteries § 2—**

Where a corporate cemetery sells lots under contract that the money paid should be used for protection and ornamentation, such funds cannot be diverted to other purposes.

**9. Same: Fraud § 9—**

Allegations that the corporate cemetery had sold burial lots upon representation that certain funds should be used for protection and ornamentation and that the cemetery had breached these agreements and had no present intention of performing them, in the absence of allegation that when the cemetery made the representations, it knew them to be false, and made them with the intention that they should be acted upon, *is held* to be a defective statement of good cause of action for fraud.

**10. Pleadings § 15—**

In passing upon the sufficiency of the allegations of the complaint to state a cause of action, the allegations must be taken as true for the purpose of the demurrer.

**11. Parties § 2½—**

There is a community of interest of the owners of lots or burial rights in a cemetery, and therefore an owner of a lot or burial right may bring an action in behalf of himself and all others similarly situated to protect the community of interest. G.S. 1-70.

**12. Pleadings § 19b—**

Where there is a misjoinder of causes of action, but not a misjoinder of parties and causes, the action should not be dismissed upon demurrer, but the court will sever the causes and divide the actions.

**13. Pleadings § 2—**

A plaintiff may unite in the same complaint several causes of action, legal or equitable, in contract or in tort, provided they all arise out of the same transaction or transaction connected with the same subject of action so that a connected story can be told of the whole. G.S. 1-123.

**14. Same—**

A cause of action against a cemetery for breach of promissory representations made in the sale of burial lots, and a cause of action against the cemetery to restrain the enforcement of unlawful and unreasonable rules and regulations in the management of the property, are improperly joined in the same complaint.

**15. Pleadings § 19b—**

Where a complaint improperly joins two separate causes of action which are defectively stated, the court, upon demurrer, should not dismiss the action, but should permit amendment and divide the actions for separate trials.

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Rudisill, J.,* August Term 1954 of CABARRUS.

Civil action heard on demurrer. The demurrer was overruled, and defendants excepted and appealed.

*Hartsell & Hartsell and William L. Mills, Jr. for Plaintiff, Appellee.*
*L. E. Barnhardt, C. M. Llewellyn and M. B. Sherrin for Defendants, Appellants.*

PARKER, J. Plaintiff instituted this action on behalf of himself and other owners of burial lots in Carolina Memorial Park against Carolina Cemetery Park Corporation and Gamaliel Coats Smith Hugenschmidt.

This is a summary of the allegations of his Complaint:

*One.* Prior to June 1942 the defendant Carolina Cemetery Park Corporation—hereafter called Cemetery Park—conceived plans for the Carolina Memorial Park, and through its agents and officers contacted plaintiff, and others, to sell them burial lots in the proposed park.

*Two.* To induce plaintiff, and others, to purchase burial lots in the proposed Memorial Park, Cemetery Park furnished its agents and officers elaborate maps and brochures of the proposed park, and instructed them to represent to plaintiff, and others, that the main object of the proposed park was to abolish the "old undemocratic method of burial" where a man's wealth and prestige were shown by towering monuments, and to substitute therefor the "new totally democratic method of burial" where all are interred exactly alike. In 1942 Cemetery Park sent two of its agents—both stockholders and one a director—to see plaintiff to sell him a burial lot.

*Three.* Cemetery Park, through its agents, directors, printed material and deeds, represented to plaintiff, and others, that all sepulchers would be beneath the sod, and marked only by bronze tablets; that certain plots of ground would be set aside in the proposed park for the erection of a multi-colored fountain, a sun dial and garden, a hut of meditation, a Masonic Memorial, a chapel, a singing tower and a Veterans' Memorial; that an adequate perpetual care fund would be established to provide proper care and upkeep of the proposed park; that the less expensive aesthetic features would be erected first, and as the proposed park developed and more funds became available the more expensive features, such as the chapel and singing tower would be built; that a beautiful and imposing singing tower would be erected as a monument to those who found a final resting place in "God's Garden," furnishing sweet sacred music during Sunday afternoon concerts and during funeral services, upon request; that a large and imposing chapel of stone or granite would be erected for funeral services; and that markers for the burial lots could be purchased from any available source, provided they were of bronze and of a size and type approved by Cemetery Park.

*Four.* The plaintiff, and others, relying upon these representations purchased burial lots in the proposed park, and have been wilfully and intentionally cheated, wronged and defrauded by Cemetery Park in these respects: (1) Cemetery Park has permitted the defendant Hugenschmidt, a former officer of Cemetery Park with full knowledge of its rules and regulations, to bury her deceased husband in a granite tomb above the ground in the Memorial Park in a section reserved solely for underground sepulchers and at the base of the Masonic Memorial; (2) Cemetery Park, though 10 years have passed since construction began on the Memorial Park and though over one-fourth of its total number of lots have been sold, has not set aside one cent for the erection of a singing tower or chapel; (3) Cemetery Park does not intend to erect a singing tower or chapel as represented, but plans to erect a cheap substitute for the singing tower; (4) that Cemetery Park has not estab-

lished, and does not intend to establish a perpetual care fund to care for the Memorial Park, and (5) has paid exorbitant sums of money to stockholders, directors and officers, which sums would have been adequate to fulfill the representations made to plaintiff and others.

*Five.* The wrongful acts and omissions of Cemetery Park have been wilfully and intentionally planned, and executed or omitted, and are in breach of the specific agreements of Cemetery Park with the plaintiff, and others, property owners in the Memorial Park, and in breach of the contract upon which plaintiff and others purchased property in the Memorial Park.

*Six.* Cemetery Park has made unreasonable rules and regulations relative to the use of property in the Memorial Park, which it has arbitrarily enforced, and has imposed certain restrictions upon plaintiff, and others, which are not embodied in its rules and regulations, in that: (1) it has refused to authorize plaintiff to place a marker on his property in Memorial Park, which marker was of a type approved by Cemetery Park, because plaintiff planned to buy the marker from someone other than it; (2) it has permitted markers not purchased from it to be placed in the Memorial Park; (3) it has demanded that plaintiff furnish proof that his proposed marker meets its specifications, though it has never obtained such proof on any other marker placed in Memorial Park; (4) it has informed plaintiff that he will be charged a fee of $35.00 for the care of any marker he does not buy from it, though it has never charged anyone else for such service, and does not care for the markers.

*Seven.* All "restrictions, rules, regulations, and impositions, as well as others hereinafter referred to, and still others contained in the rules and regulations adopted by the defendant corporation, but which have not been set out herein, are unlawful and unreasonable," exceeding its lawful authority and are imposed, applied and enforced "in a capricious, arbitrary, unreasonable and unlawful manner."

*Eight.* Cemetery Park has wrongfully engaged in these acts to monopolize the business of furnishing markers in Memorial Park in order to enrich its stockholders, and removes all identification from graves making it almost impossible to find them. That this removal of identification is arbitrary and unreasonable, and plaintiff further alleges the custom of morticians in marking graves.

*Nine.* Cemetery Park adopted unlawful rules forbidding anyone other than itself to do unnamed services in Memorial Park, which the owners could do, thereby extorting from them unreasonable sums of money.

*Ten.* Cemetery Park has attempted to defraud property owners in Memorial Park by stamping upon their delivered deeds for burial lots

"This Property has been Recorded," when it had not been, and that such acts were wilful and fraudulent and intended to keep the owners from having their deeds recorded.

*Eleven.* Cemetery Park by its rules and regulations compels all people desiring to sell or transfer property in the Memorial Park to employ it to prepare the deeds for which it charges, thereby attempting to monopolize the making of deeds and is practicing law without a license in violation of G.S. 84-4.

*Twelve.* Plaintiff, and other owners, of burial lots in the Memorial Park have a property right in the Memorial Park, and are without a remedy at law whereby their interests may be protected.

Wherefore, the plaintiff prays: *One.* That a receiver be appointed for Cemetery Park until such time as an adequate fund is set aside for the perpetual care of the Memorial Park, and plans are perfected for the construction and payment of the proposed singing tower and chapel. *Two.* That Cemetery Park be enjoined from monopolizing the business of selling markers to property owners in Memorial Park; from attempting to coerce the property owners in Memorial Park into buying markers from it; from adopting any rules applicable to property owners in the Memorial Park, which do not apply to all alike; from charging any fee for any service which is unreasonable or above that usually charged by others for similar service; from stamping deeds for lots in Memorial Park "This Property Has Been Recorded"; from practicing law; from removing markers placed flush or can be placed flush with the earth by an undertaker free of charge. *Three.* That Cemetery Park be ordered to place a bronze marker similar to other markers in the Memorial Park at a charge not in excess of the price usually charged by others for similar services. *Four.* That the defendant Hugenschmidt be required to remove the body of her husband from the granite tomb at the base of the Masonic Memorial, and that Cemetery Park be required to restore the Masonic Memorial to its original condition, prior to the erection of the Hugenschmidt tomb.

By leave of Court plaintiff amended his Complaint to allege that the matters complained of are of common or general interest to a large number of persons so numerous that it is impracticable to bring them all into court.

The defendants demurred to the Complaint on four grounds: *One.* Several causes of action have been improperly united. *Two.* The Complaint does not state facts sufficient to constitute a cause of action, in that the plaintiff has not legal capacity to sue, and in that necessary allegations as to fraud are lacking. *Three.* There is a defect of parties defendant because there is no relationship between the defendants as

to the relief prayed. *Four.* There is a defect of parties plaintiff in that plaintiff is the only party in interest.

The Complaint further alleges that the defendant Carolina Cemetery Park Corporation is a corporation duly organized and existing under and by virtue of the laws of the State of North Carolina with its principal place of business in Cabarrus County.

The Trial Judge overruled the demurrer, and the defendants excepted and appealed.

It would seem from a study of the Complaint that plaintiff has attempted to state and to unite in one cause of action five causes of action. *First.* A cause of action against the corporate defendant for breach of contract based on non-performance of fraudulent representations of promissory acts made to plaintiff, and others, inducing them to purchase burial lots in Carolina Memorial Park, and to compel the performance of such promissory acts. *Second.* A cause of action against the corporate defendant to protect the rights of plaintiff, and others, who own burial lots in Carolina Memorial Park, against the enforcement of unlawful and unreasonable rules and regulations made by the corporate defendant in respect to the use of burial lots therein. *Third.* A cause of action against the corporate defendant to enjoin it from attempting to defraud property owners in Carolina Memorial Park by stamping their delivered deeds "This Property Has Been Recorded." *Fourth.* A cause of action to enjoin the corporate defendant from unlawfully practicing law without a license. *Fifth.* A cause of action to require the defendant Hugenschmidt to remove the body of her deceased husband from the granite tomb at the base of the Masonic Memorial and to require the corporate defendant to restore the Masonic Memorial to its condition prior to the erection of this tomb.

We shall discuss first the attempt by plaintiff to allege a cause of action against the individual defendant and the corporate defendant to compel by injunction the removal of the body of Smith, deceased husband of the individual defendant, from the granite tomb and to compel the corporate defendant apparently to demolish the tomb. In 25 C.J.S., Dead Bodies, Sec. 4, it is said: "There is a distinction between the rights existing prior to burial and those after burial, because after its interment the body is in the custody of the law, and a disturbance of its resting place and its removal is subject to the control and direction of a court of equity in any case properly before it. It is the policy of the law, except in cases of necessity or for laudable purposes, that the sanctity of the grave should be maintained, and that a body once suitably buried should remain undisturbed, and a court will not ordinarily order or permit a body to be disturbed unless there is a strong showing that it is necessary and that the interests of justice require it."

The sentiment of all civilized peoples, since earliest Biblical times, has held in great reverence the resting places of the dead as hallowed ground. In such matters we deal with concerns that basically are spiritual. Awe toward the dead was a most powerful force in forming primitive systems for grappling with the supernatural. "It is a sound public policy to protect the burying places of the dead." *Cave Hill Cemetery Co. v. Gosnell,* 156 Ky. 599, 161 S.W. 980.

Courts are reluctant to require disturbance and removal of bodies that have once been buried, for courts are sensitive to all those emotions that men and women hold for sacred in the disposition of their dead. Most people desire, and it is a natural desire, that there shall be forever an uninterrupted repose of their bodies when buried, and a regard for the feelings and love of their kindred and friends demands that their sepulchers shall not be violated except for compelling reasons. These tender sentiments and instincts of humanity are embedded deep in the hearts of men, and cannot be ignored. The aversion to disturbance of one's remains is illustrated by Shakespeare's choice of his own epitaph:

> "Good friend, for Jesu's sake forbear
>   To dig the dust enclosed here.
>   Blest be the man that spares these stones,
>   And curst be he that moves my bones."

*S. v. Wilson,* 94 N.C. 1015; *S. v. McLean,* 121 N.C. 589, 28 S.E. 140, 42 L.R.A. 721; *Cabe v. Parker-Graham-Sexton, Inc.,* 202 N.C. 176, 162 S.E. 223; *Thompson v. Deeds,* 93 Iowa 228, 61 N.W. 842, 35 L.R.A. 56; *Gardner v. Swan Point Cemetery,* 20 R.I. 646, 40 A. 871, 78 Am. St. Rep. 897; *McGann v. McGann,* 28 R.I. 130, 66 A. 52; *Silvia v. Helger,* 75 R.I. 397, 67 A. 2d 27, 10 A.L.R. 2d 216; *Sexson v. Commonwealth,* 239 Ky. 177, 39 S.W. 2d 229; *Fowlkes v. Fowlkes,* Tex. Civ. Appeals, 133 S.W. 2d 241; *Goldman v. Mollen,* 168 Va. 345, 191 S.E. 627; *Kusky v. Laderbush,* 96 N.H. 286, 74 A. 2d 546, 21 A.L.R. 2d 536; *Currier v. Woodlawn Cemetery,* 300 N.Y. 162, 90 N.E. 2d 18, 21 A.L.R. 2d 465.

"Neither the ecclesiastical, common, nor civil system of jurisprudence permits exhumation for less than what are considered weighty, and sometimes compelling reasons. Securing 'unbroken final repose' has been the object of both civil and criminal legislation." Anno. 21 A.L.R. 2d p. 476.

The unauthorized disinterring of a dead body in this State is an indictable offense. G.S. 14-150. See also G.S. 14-148 as to criminal offense of removing or defacing monuments and tombs.

The plaintiff has completely failed to allege any compelling reasons to force the individual defendant by injunction to remove the buried

body of her deceased husband from the tomb and to force the corporate defendant to disturb the tomb, and restore the Masonic Memorial to its condition before erection of the tomb at its base, and has stated no cause of action against them for those ends. The demurrer on the part of the individual defendant and of the corporate defendant on this alleged cause of action should have been sustained.

The plaintiff has alleged no cause of action to prevent the corporate defendant by injunction from practicing law without a license—a criminal offense, G.S. 84-4, since he has an adequate remedy at law by having the corporate defendant indicted and convicted by the State. *Matthews v. Lawrence,* 212 N.C. 537, 193 S.E. 730; *Town of Clinton v. Ross,* 226 N.C. 682, 40 S.E. 2d 593; *Dare County v. Mater,* 235 N.C. 179, 69 S.E. 2d 244. For the purposes of the demurrer we must take as true the allegation of the Complaint that the corporate defendant is engaged in the unlawful practice of law. *Belch v. Perry,* 240 N.C. 764, 84 S.E. 2d 186.

The plaintiff has attempted to allege a cause of action against the corporate defendant to enjoin it from attempting to defraud property owners in Carolina Memorial Park by stamping their delivered deeds "This Property Has Been Recorded." In this respect the allegations of the Complaint completely fail to state the essential elements of fraud, and state no cause of action. *Cofield v. Griffin,* 238 N.C. 377, 78 S.E. 2d 131.

We come now to plaintiff's attempt to state a cause of action to enjoin the enforcement of unlawful and unreasonable rules and regulations made by the corporate defendant, and to his attempt to state a cause of action for breach of contract against the corporate defendant. The instrument conveying the burial lot to plaintiff is not a part of the Complaint. Therefore, we do not know whether plaintiff owns the lot in fee or has a mere easement or right of burial: nor do we know whether or not plaintiff's rights in the lot are expressed in the instrument to be subject to any rules, regulations or by-laws of the corporate defendant. It seems plain that plaintiff does not have entire control over his lot, but has acquired a limited interest in the lot, which is part of one connected whole: that whole being conducted, maintained and managed by the corporate defendant for the benefit of him and those similarly situated. Plaintiff and the other owners of burial lots in Carolina Memorial Park have a common interest, and where plaintiff has a right to sue, he may sue in behalf of himself and others having a like interest in Carolina Memorial Park for purposes common to all and beneficial to all. *Beatty v. Kurtz,* 2 Pet. (U.S.) 566, 7 L. Ed. 521; 10 Am. Jur., Cemeteries, Sec. 39. See also G.S. 1-70.

Whether plaintiff owns the lot in fee, or has a mere easement or right of burial therein, he has a right to sue in behalf of himself and in behalf of others having a like interest for purposes common to all and beneficial to all to protect by injunction his rights as a lot owner against the enforcement of unlawful and unreasonable regulations made by the corporate defendant in respect to his use of his lot, for the rules and regulations adopted must be uniform and reasonable. *Nicholson v. Daffin,* 142 Ga. 729, 83 S.E. 658, L.R.A. 1915 E 168; *Scott v. Lakewood Cemetery Asso.,* 167 Minn. 223, 208 N.W. 811, 47 A.L.R. 64; *Mansker v. City of Astoria,* 100 Or. 435, 198 P. 199 (rehearing denied in 100 Or. 459, 199 P. 381); Anno. 32 A.L.R. 1406; 10 Am. Jur., Cemeteries, p. 505 and p. 515; 14 C.J.S., Cemeteries, pp. 95-96. Plaintiff has alleged that the rules and regulations adopted by the corporate defendant set out in its Complaint and still others not set out are unlawful and unreasonable. That is totally inadequate, for plaintiff must allege plainly and concisely the rules and regulations he contends are unlawful and unreasonable. G.S. 1-122 (2); *Guy v. Baer,* 234 N.C. 276, 67 S.E. 2d 47. Apparently plaintiff has a defective statement of a good cause of action which is fatal, *Scott v. Veneer Co.,* 240 N.C. 73, 81 S.E. 2d 146, and which in violation of Rule 20 (2) Rules of Practice in the Supreme Court, 221 N.C. 557, and what was said in respect thereto in *King v. Coley,* 229 N.C. 258, 49 S.E. 2d 648; and *Parker v. White,* 237 N.C. 607, 75 S.E. 2d 615, he has not stated separately but has incorporated in another cause of action.

It seems also that plaintiff has alleged a defective statement of a good cause of action in behalf of himself against the corporate defendant for breach of contract predicated on promises made by it to him with a present intention not to perform them. The allegations of the Complaint that the plaintiff has been wrongfully cheated, wronged and defrauded by the corporate defendant's failure to erect the buildings and aesthetic features it represented to him it would build, that it has not established and does not intend to establish a perpetual care fund for the cemetery, it represented to him it would do, and that it has paid large sums of money to its stockholders, officers and directors, which sums were adequate to fulfill the representations made to plaintiff, state facts that have a direct tendency to impair the value of plaintiff's lot, and gives him a cause of action. We, of course, are dealing with allegations in pleadings which we accept as true on a demurrer, and not with proof. *Clark v. Rahway Cemetery Co.,* 69 N. J. Eq. 636, 61 A. 261; *Brown v. Maplewood Cemetery Ass'n.,* 85 Minn. 498, 89 N.W. 872; 14 C.J.S., Cemeteries, Sec. 14; 10 Am. Jur., Cemeteries, Sec. 39; *Williams v. Williams,* 220 N.C. 806, 18 S.E. 2d 364. ". . . funds derived by a cemetery association from the sale of lots, under a contract that the

money paid shall be used in the protection and ornamentation of the cemetery, cannot be diverted to other purposes." 14 C.J.S., Cemeteries, p. 73. However, plaintiff has failed to allege the essential elements of fraud, in that he has not alleged that such representations made to him were false, that when the corporate defendant made them it knew the representations were false, and that it made such representations with intention that they should be acted upon by plaintiff. *Cofield v. Griffin, supra.*

Plaintiff has alleged in his Complaint that other owners of burial lots in this cemetery were induced by similar representations to purchase lots, that they have been similarly cheated and defrauded by the failure to fulfill such representations; that these things are of common or general interest to a large number of persons so numerous that it is impracticable to bring them all into court. Each owner of a lot in this cemetery, who was induced by such representations to buy a lot, has a part of one connected whole, has a common interest in the erection of the buildings and aesthetic features and in the establishment of a perpetual care fund for the upkeep and maintenance of the cemetery and has a common interest with plaintiff, for the purpose of his action is common and general to all and beneficial to all. There is a community of interest in the cemetery. Plaintiff is authorized by G.S. 1-70 to bring this action in behalf of himself and other owners of lots in the cemetery who by reason of such representations were induced to buy lots. See *Bronson v. Ins. Co.,* 85 N.C. 411; *Beatty v. Kurtz, supra.*

The defendants demurred on the ground that there was a misjoinder of causes. When that exists, the action will not be dismissed: the court will sever the causes and divide the actions. G.S. 1-132; *Smith v. Gibbons,* 230 N.C. 600, 54 S.E. 2d 924; *Pressley v. Tea Co.,* 226 N.C. 518, 39 S.E. 2d 382. The defendants did not demur on the ground that there was a misjoinder of parties and causes: such joinder is fatal, and causes a dismissal of the action. *Teague v. Oil Co.,* 232 N.C. 469, 61 S.E. 2d 345; *Mills v. Bank,* 208 N.C. 674, 182 S.E. 336.

The plaintiff, in violation of our rules of practice, has attempted to state and unite in one cause of action two good causes of action in a defective manner. Is this a misjoinder of causes requiring a severance, or may both be stated separately in one cause?

G.S. 1-123 provides, "the plaintiff may unite in the same complaint several causes of action, of legal or equitable nature, or both, where they all arise out of—1. The same transaction, or transaction connected with the same subject of action. . . . But the causes of action so united . . . must affect all the parties to the action, and not require different places of trial, and must be separately stated."

"The word 'transaction,' as employed in this section (G.S. 1-123), means something which has taken place whereby a cause of action has arisen, and embraces not only contractual relations but also occurrences in the nature of tort." *Smith v. Gibbons, supra.* The term "subject of action" as used in the same statute denotes "the thing in respect to which the plaintiff's right of action is asserted, whether it be specific property, a contract, a threatened or violated right, or other thing concerning which an action may be brought and litigation had." *Hancammon v. Carr,* 229 N.C. 52, 47 S.E. 2d 614.

Tested by these rules it is apparent that the two causes of action defectively stated did not arise out of the same transaction, or transactions connected with the same subject of action. One cause of action defectively stated arose out of a breach of contract in the sale of a burial lot. The other out of a different subject of action, the adoption by the corporate defendant of unlawful and unreasonable rules and regulations enforced in an arbitrary and unlawful manner. The two causes of action are not so interwoven that a full story as to one cannot be told without telling the essential facts of the other.

The Trial Court should have sustained the demurrer to the Complaint for the reason that it does not state facts sufficient to constitute a cause of action against either defendant, or both of them. *Scott v. Veneer Co., supra.* This conclusion does not compel a dismissal of the action, because plaintiff has alleged a defective statement of two causes of action, and as to these two causes of action he will be permitted to amend. *Davis v. Rhodes,* 231 N.C. 71, 56 S.E. 2d 43. Further, as to these two causes of action there is a misjoinder of causes, and the Judge of the Superior Court will divide the action on the docket for separate trials.

The Complaint does not refer to Article 7, Chapter 65, of the General Statutes, which is headed "Cemeteries Operated for Private Gain." It is alleged that the corporate defendant is a North Carolina corporation. *Quaere:* Is it required to report information as to its perpetual care fund to the Burial Association Commissioner?

For the reasons given, the judgment overruling the demurrer is
Reversed.

BARNHILL, C. J., took no part in the consideration or decision of this case.