205 A.2d 837.

EMMA LONARDO *vs.* MARY QUARANTA *et al.*

DECEMBER 21, 1964.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

Powers, J. This is an action of case "for libel and interference with right of burial," as laid in the plaintiff's writ. It charges the defendants with joint and several liability and they severally demurred to each count of the plaintiff's two-count declaration. Their demurrers were sustained by a superior court justice and the case is before us on the plaintiff's bill of exceptions, her sole exception being to the sustaining of the demurrers as aforesaid.

In the interest of avoiding the uncertainty which sometimes arises from paraphrasing, we deem it advisable to set forth counts I and II of plaintiff's declaration in full in an appendix hereto.

For our immediate purposes, however, the first count alleges substantially that plaintiff is the eldest daughter of the late Luberta Cusimano and enjoyed a close position of love, trust and confidence with the deceased; that defendants are the sister of the deceased and the funeral director engaged to handle the burial arrangements; that plaintiff

had no knowledge of deceased's illness and subsequent death until reading the obituary notice; that defendants jointly and severally took control of the body for burial purposes and, knowing of plaintiff's close relationship with the deceased and intending to destroy her reputation, caused plaintiff's name to be omitted from the obituary notice; that they prevented her from attending the wake of the deceased and from sitting with the deceased's family during the requiem mass; that they caused plaintiff to be seated at the rear of the church, prevented her from joining the leadership of the cortege, and caused her to follow at the rear; and that they prevented plaintiff from standing near the body of the deceased during interment. The plaintiff avers that these acts and deeds were the equivalent of publication and were intended to show, did show, and people believed contrary to the fact that plaintiff enjoyed neither filial relationship with the deceased nor possessed her trust and confidence and that, by committing these grievances, defendants brought plaintiff into "great disrepute, ridicule, contempt, and disesteem within her community."

The second count for interference with "right of burial," alleges that this right vested in plaintiff as the eldest daughter of the deceased, but that defendants wantonly and maliciously interfered with it causing plaintiff to suffer mental anguish.

The two counts are followed by the averment "All to the plaintiff's damage $10,000" and a claim for punitive damages.

Each defendant demurred to the first count on the ground, inter alia, that it failed to state a cause of action for libel. We think their position to be well taken and the sustaining of their demurrers thereto to be correct. The count would appear to be defective in several respects but we need point to only one. In *Henry* v. *Cherry & Webb,* 30 R. I. 13, at page 18, this court stated its conviction that

an essential element of an action for libel was that the defamatory publication should be by printing or writing, or by signs or pictures. We are not persuaded that this requirement should be so far relaxed as to be applicable to the circumstances of the instant case.

The plaintiff freely acknowledges that the publication of the obituary notice or any one of the other acts set out is insufficient in and of itself. Rather, she contends, that taken in the aggregate, they are equivalent to a publication of a malicious falsehood.

Assuming, without deciding, that the acts complained of can be so grouped, and further assuming that, considered as a group, they can be equated to a publication, such publication lacks the necessary element heretofore stated.

The defendants' demurrers to the second count are based on the ground, inter alia, that it does not state a cause of action in case. We think their position correctly states the law in this jurisdiction.

They are content, however, to rest on the proposition that plaintiff's bald allegation that she, being the eldest daughter, possessed the right of burial, is insufficient. They contend that where a claim is made after burial, the controlling element is that of consent, citing *Hackett* v. *Hackett,* 18 R. I. 155, and *Gardner* v. *Swan Point Cemetery,* 20 R. I. 646.

These, however, are causes in equity and are concerned, as are the cases cited therein, with the ex post facto enforcement of rights cognizable in equity. We entertain no doubt as to their correctness but, in our judgment, they do not reach the issue here present, namely, the right to recover money damages in an action at law for conduct which may, in equity, have warranted injunctive relief before burial or afforded a corrective remedy thereafter. No case in point has been called to our attention nor have we found any in the course of our independent research.

. There is thus presented a question of first impression, at least in this jurisdiction. However, the courts have generally held that, except for libel or slander where in certain circumstances a defamatory statement may be actionable per se, recovery cannot be had in an action of case, absent an allegation of actual damages. See *Simone* v. *Rhode Island Co.*, 28 R. I. 186, and *Henry* v. *Cherry & Webb, supra.*

Moreover, the question is one that involves public policy. Never to our knowledge having been considered by the general assembly, we are not persuaded that it should be resolved by this court in favor of a litigant whose claim to money damages rests on the circumstances here present.

The plaintiff's exception is overruled, and the case is remitted to the superior court for further proceedings.

## APPENDIX

### "Count I

"The plaintiff herein is the daughter of the late Luberta Cusimano and the sister of Margaret Celona, Biago Cusimano, Bernardo Cusimano, Luco Cusimano and Sisto Cusimano. Defendant, Mary Quaranta, was the sister of the late Luberta Cusimano. During the year 1962, and for a great number of years prior thereto the plaintiff enjoyed the closest filial relationships with her mother, Luberta Cusimano and enjoyed the paramount trust and confidence of her mother, vis-a-vis the plaintiff's other brothers and sister and her late mother's other relatives.

"On 16 September 1962, Luberta Cusimano died at the Rhode Island Hospital after a short illness. The plaintiff had no knowledge of her mother's aforesaid illness and hospitalization. The first knowledge the plaintiff had of her mother's death was upon her reading an obituary notice thereof in the Evening Bulletin, a newspaper published in the City of Providence. Upon the expiration of Luberta Cusimano the defendants, jointly and severally, took possession and control of the body of the deceased for the purpose of conducting burial and funeral arrangements.

"The defendants, well knowing the close filial relationship of the deceased and the plaintiff, and the paramount trust and confidence reposed in the plaintiff, did, jointly and severally, wickedly and maliciously, intending to destroy the reputation of the plaintiff and to cause her to be regarded as a person in whom the deceased reposed no trust or confidence and with whom the deceased had no filial relationship whatsoever did engage in and execute acts which were the equivalent to stating that the plaintiff enjoyed no filial relationship with the deceased and in whom the deceased reposed no trust or confidence, as follows:

"1. The defendants, jointly and severally, caused the following to be printed in the obituary notice columns of the Evening Bulletin:

" 'Cusimano, Rebecca (Pascale) September 16, Beloved wife of the late Antonio and mother of Bernard, Sisto and Lugo Cusimano and sister of Mrs. Mary Quaranto and Anthony Pascale. Late residence 30 DePinedo St. Relatives and friends are invited to attend the funeral from the Joseph Mansolillo & Sons Funeral Home, 225 Pocasset Ave., Wednesday, September 19, at 7:45 a.m., followed by a requiem Mass in St. Ann's Church, Hawkins Street, at 9 a.m. Visiting hours Monday and Tuesday 2-4 and 7-9:30 p.m.'

"2. The defendants, jointly and severally, forbade and prevented the plaintiff from attending the wake of the deceased thereby precluding the plaintiff from receiving the condolences of other relatives and friends of the deceased who attended said wake.

"3. The defendants, jointly and severally, forbade and prevented the plaintiff from sitting and being seated with, the close relatives of the deceased nearest her body during the celebration of the requiem Mass therefor. Instead, the defendants, jointly and severally, caused the plaintiff to be seated at the rear of the church at a point farthest from the place of the celebration of said Mass.

"4. The defendants, jointly and severally, prevented and precluded the plaintiff from leading or joining the leadership of the funeral cortege of the deceased immediately behind the funeral coach. Instead, the defendants, jointly and severally, caused the plaintiff to bring up the funeral cortege at its rear.

"5. The defendants, jointly and severally, prevented and precluded the plaintiff from standing in close proximity to the body of the deceased during its interment at the cemetery. Instead, the plaintiff was compelled to attend the aforesaid interment around the periphery of those congregated thereat, on 19 September 1962.

"By the aforesaid acts, which were the equivalent of the publication of words, the defendants, jointly and severally, intended to and did imply that the plaintiff was a person who enjoyed no filial relationships with the deceased and in whom the deceased reposed no trust and confidence whatsoever. Aforesaid status, or lack thereof, is vulgarly known as 'being disowned'.

"The defendants' acts, or results thereof, were so conducted, that, the friends, relatives and acquaintances of the deceased were warranted in believing and did believe in the premises that the plaintiff was 'disowned' by the deceased, i.e., enjoyed no filial relationships with the deceased or in whom the deceased reposed no trust or confidence. In fact and in truth the plaintiff was never 'disowned' by the deceased in the premises and always enjoyed the trust and confidence thereof and was preeminent in the enjoyment of filial relationships.

"By means of the committing of the aforesaid grievances by the said defendants, the plaintiff was brought into great disrepute, ridicule, contempt, and disesteem within her community.

"Count II

"Plaintiff herein is the eldest daughter of the late Luberta Cusimano who died on September 17, 1962. Thereupon, the right of burial vested in the plaintiff. The aforesaid right of burial included the right to determine the time; manner, place of burial and the selection of a monument. Notwithstanding the aforesaid right of the plaintiff; the sister of the deceased, Mary Quaranta and Joseph Mansolillo, an undertaker and funeral director, defendants herein, jointly and severally, vi et armis, unlawfully interfered with the exercise of the plaintiff's right of burial. Specifically, the defendants, jointly and severally, took possession of the body of the late Luberta Cusimano, to the exclusion of the plaintiff and undertook to embalm, hold the wake, publish obituary notices, supervise funeral arrangements at the requiem Mass said for said Luberta Cusimano, policed and arranged the funeral cortege, and determined and conducted interment thereof on September 19, 1962. As a consequence of the defendants' conduct in the premises the plaintiff suffered mental anguish. The defendants' acts in the premises were wanton, malicious and were in reckless disregard of the plaintiff's rights."

*Pontarelli & Berberian, Aram K. Berberian,* for plaintiff.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh, Kenneth P. Borden,* for defendant Joseph Mansolillo.