317 A.2d 430.

BARBARA SULLIVAN *vs.* CATHOLIC CEMETERIES, INC. *et al.*

APRIL 11, 1974.

KELLEHER, J. The litigants in this appeal are a niece and two of her aunts and an uncle. The aunts and uncle have taken an appeal from a judgment entered in the Superior Court ordering the disinterment of the body of Edward W. Sullivan from a plot originally purchased by his father and its removal to a plot owned by the deceased's daughter. Judgment followed submission of the case to the trial justice on an agreed statement of facts.

The plaintiff is the eldest of the four children of Edward W. Sullivan who died on February 26, 1972. Two of the children are minors. At the time of his death, Sullivan was

employed by the Roman Catholic Diocese of Providence as the superintendent of its St. Francis Cemetery. He was divorced and lived on the cemetery grounds in premises supplied by his employer. He died at the Rhode Island Medical Center. The transfer of the body from the Center in Cranston to a Providence funeral home was arranged by his sister Helen and an attorney. The aunt notified her niece Barbara that the body had been taken to the funeral home where Barbara was invited to come and assist the aunts in the selection of a casket. Barbara's married sister Kathleen did go to the undertaker's place of business and sought to assume the responsibility for all arrangements incidental to her father's burial. However, Aunts Helen and Genevieve proceeded to choose the casket and make all the arrangements for the wake, funeral, and burial of their brother. Aunt Helen paid $1,138 of a $1,643 funeral bill. The balance was paid by the Federal Government in the form of a social security benefit and a veteran's allowance.

On February 29, Edward was interred at St. Francis in a plot that had been originally acquired by his father. Title to the family plot was in the deceased, his three sisters and three brothers. Within weeks after her father's burial, Barbara purchased a plot at St. Francis. Cemetery officials informed the daughter that they could not honor her request to transfer her father's body to her plot without the signed consent of her aunts and uncles. An inquiry resulted in a split vote. Three of them agreed to a transferral. Aunts Helen and Genevieve and Uncle Bernard gave a negative response. This litigation then began.[1]

Incidents involving the burial of the dead and the safeguarding of a deceased's right of repose are ones which, while steeped in emotional sensitivity, are subject to the

---

[1]Catholic Cemeteries, Inc. manages the operations at St. Francis Cemetery. It is a nominal defendant and has expressed a willingness to abide by the directive of any final court order.

equitable powers of the trial court. *Pierce* v. *Proprietors of Swan Point Cemetery,* 10 R. I. 227 (1872). *Pierce* also recognized that although a dead body is not classified as "property" in the true legal sense of that term, it has a status of "quasi property," to which are attached certain rights. Later, in *Hackett* v. *Hackett,* 18 R. I. 155, 26 A. 42 (1893), this court first laid down the rule that ordinarily a widow has, as against the next of kin, the primary right to control the burial of her husband, but then went on to emphasize that there was a substantial diminution of that right once the body has been laid to rest. In *Hackett* it was held that in all cases where a claim is made after burial, the controlling element is whether prior to the burial the consent of those "most interested" had been obtained. This principle was reiterated in *Gardner* v. *Swan Point Cemetery,* 20 R. I. 646, 40 A. 871 (1898); *see also, Lonardo* v. *Quaranta,* 99 R. I. 70, 205 A.2d 837 (1964).

Concededly, there is a reluctance to disturb the quiet of the grave and the repose of the dead. A body once suitably buried will remain so unless the removal is dictated by "necessity" or some other "laudable purposes." *Silvia* v. *Helger,* 75 R. I. 397, 67 A.2d 27 (1949). While the disposition of each case is dependent upon its own facts and circumstances, the court exercising a "benevolent discretion" will be sensitive "* * * to all those promptings and emotions that men and women hold for sacred in the disposition of their dead." *Yome* v. *Gorman,* 242 N. Y. 395, 152 N. E. 126 (1926). Looming large as a crucial factor in determining the advisability of a disinterment is the presence or absence of the consent of those who had the paramount right to determine the time, manner, and place of burial.

The trial justice found that Barbara and her sister Kathleen had the preeminent right of burial and since they had not agreed to the burial arrangements made by their aunts, he ordered the disinterment.

The aunts and their brother contend that there is no legal basis in this jurisdiction for giving such a preference. They assert that they are just as much "next of kin" as their nieces and in fact they describe themselves as being "wholly of the same blood" as their deceased brother while their nieces are only "partly of the same blood." While defendants' biological dissertation is informative, it overlooks the language in the *Hackett* and *Gardner* cases where it was stressed that a burial with the consent of those *most nearly interested* will be regarded in law as a final sepulture which will not, in the absence of exceptional circumstances, be disturbed. It is true that this court has not specifically laid out all branches of a family tree and delineated the priority of burial rights among nieces, nephews, aunts and uncles, but that is only because that precise question has never been before us. Up to now the relatives of a deceased who had been involved in grave-site disputes before us have been a widow and a daughter,[2] or a father and a widow,[3] or a grandmother and granduncles and grandaunts,[4] or a widow and brothers and sisters.[5]

The guide that is to be followed has been set out long ago in the leading case of *Pettigrew* v. *Pettigrew*, 207 Pa. 313, 56 A. 878 (1904), when the court ruled: "If there is no surviving husband or wife, the right is in the next of kin in the order of their relation to the decedent, as children of proper age, parents, brothers and sisters, or more distant kin * * *." This rule of priority is to be applied with reason. It is flexible and may be modified by circumstances of the moment. We see nothing in the record that would cause any deviation from this rule.

---

[2]*Pierce* v. *Proprietors of Swan Point Cemetery*, 10 R. I. 227 (1872).

[3]*Hackett* v. *Hackett*, 18 R. I. 155, 26 A. 42 (1893).

[4]*Silvia* v. *Helger*, 75 R. I. 397, 67 A.2d 27 (1949).

[5]*Previty* v. *Cappuccio*, 107 R. I. 210, 266 A.2d 39 (1970).

■ As noted earlier, this case was presented to the trial justice on an agreed statement of facts. The trial justice specifically found that the older sisters Barbara and Kathleen had not consented to the burial of their father in the Sullivan family plot. In reviewing this finding we must be mindful of our past statements that, it being the trial justice's job to draw the inferences, his findings will be upheld, whether they be affirmative or negative, so long as they are reasonable and logical. *Chase* v. *Blackstone Distributing Co.,* 110 R. I. 537, 294 A.2d 392 (1972).

■ It is obvious that when the daughters were notified of their father's passing, there had been a *fait accompli.* The aunts were in control. We think it especially significant that when the agreed statement of facts was originally typed, it said that the daughters "* * * would be allowed to assist in the selection of the deceased's casket and other arrangements incidental to his funeral." However, the facts as agreed to deleted all reference to the phrase "and other arrangements incidental to his funeral." We believe this deletion and Kathleen's attempt to assume responsibility for her father's interment afforded the evidentiary basis to support the trial justice's finding of a lack of consent by those who had the primary right of burial. We see no necessity that, in order to establish an absence of consent, Barbara or her sister transform the funeral parlor into a battleground. Bury the dead first and' then seek redress in the courts is a salutary rule.

The defendants in attacking the trial justice's findings contend that in his decision he referred to matters that were not within the agreed statement of facts. The trial justice did allude to Barbara's allegation that her father had expressed a desire to be buried in the plot that she had eventually purchased. This allegation is found in a memorandum submitted by counsel on her behalf to the trial court. However, the trial justice did not rest his decision upon any

alleged preference of the father. It is clear that his order was based strictly on the lack of consent by the two oldest daughters to the burial of their father. There is evidence which supports his conclusion.

We have reviewed the record and the defendants have not persuaded us that the finding of the trial justice is based on any material misconception of the evidence or is clearly wrong.

The defendants' appeal is denied and dismissed.

Petition for reargument denied.

Mr. Chief Justice Roberts did not participate.

*Edward E. Dillon, Jr.*, for plaintiff.

*Nugent & Nugent, J. Joseph Nugent, J. Joseph Nugent, Jr.*, for defendants.