**Maria E. FLOYD, individually and as a personal representative of the Estate of James H. Floyd, deceased**

v.

**LYKES BROTHERS STEAMSHIP COMPANY, INC.**

Civ. A. No. 84–6136.

United States District Court, E.D. Pennsylvania.

March 11, 1987.

Walter Z. Steinman, Philadelphia, Pa., for plaintiff.

John T. Biezup, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HANNUM, Senior District Judge.

The plaintiff, Maria E. Floyd, brought this action pursuant to the Death on the High Seas Act, 46 U.S.C. § 761, and the Jones Act, 46 U.S.C. § 688, for the wrongful death of her father and improper disposition of her father's remains. The plaintiff alleges that her father, James H. Floyd, was a member of the crew of the SS Shirley Lykes; that the defendant owned, operated and managed the ship; and that as a result of the defendant's negligence and of the ship's unseaworthiness, Mr. Floyd sustained injuries and illness which caused his death on August 19, 1983. The plaintiff further contends that following the death of Mr. Floyd, the defendant disposed of his body by putting it over the side of the ship and into the sea without obtaining the permission of Mr. Floyd's family.

Presently before the Court are the following motions: the defendant's motion for summary judgment on the plaintiff's first cause of action in which the plaintiff alleges the wrongful death of Mr. Floyd and the defendant's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims for improper disposition of the decedent's remains made by the decedent's mother, brothers and sisters.

## I. The defendant's motion for summary judgment on the plaintiff's wrongful death claim

In support of the motion for summary judgment on the plaintiff's wrongful death claim, in which the defendant contends that Mr. Floyd's death was due to natural causes, the defendant asserts that Mr. Floyd served as an able-bodied seaman on its vessel, the SS Shirley Lykes, from June 28, 1983 to August 19, 1983. The defendant alleges that it first became aware that Mr. Floyd was unwell when he approached Chief Mate Leslie G. Rathbun, the medical officer on board the SS Shirley Lykes, at 1:00 P.M. on August 19, 1983, and complained of a headache. Chief Mate Rathbun found that Mr. Floyd's temperature, pulse, and rate of respiration were normal and gave Mr. Floyd four aspirin. At 2:30 P.M., Mr. Floyd told Chief Mate Rathbun that the aspirin were working. Chief Mate Rathbun gave sixteen aspirin to Mr. Floyd at 5:00 P.M. and prescribed that he take two every two hours.

The defendant further contends that when Anatolio Martinez, Mr. Floyd's bunkmate, attempted to wake up Mr. Floyd at about 11:30 P.M. for his watch, which began at midnight, he was unable to do so. Mr. Martinez immediately called Captain Edward M. Powell who went to Mr. Floyd's cabin with Chief Mate Rathbun. When they arrived, they noted that Mr. Floyd was lying on his back with the covers pulled up. They saw no signs of foul play. The Captain and Chief Mate conducted an examination of Mr. Floyd's body and allegedly observed the following:

Mr. Floyd's eyes were open and appeared "milky"; Mr. Floyd's head was "thrown back"; Mr. Floyd was not breathing; Mr. Floyd was noted to be cool to the touch; Mr. Floyd's arm was noted to have begun to stiffen; when the Captain tried to palpate a pulse in the right wrist, neck, and chest of Mr. Floyd, there were no pulsations detectable; and when the Captain tried to hear a heart beat by placing his ear to Mr. Floyd's chest, there was no sound audible.

Based upon the examination, which lasted about an hour, both Captain Powell and Chief Mate Rathbun concluded that Mr. Floyd was dead and that nothing could be done to revive him.

The defendant asserts that Mr. Floyd was dead when Captain Powell and Chief Mate Rathbun began their examination of him, that nothing anyone could have done would have restored life to Mr. Floyd, that Mr. Floyd's death was due to natural causes and not caused by the negligence of the defendant or any of its employees, the unseaworthiness of the SS Shirley Lykes, or any breach of the defendant's obligations.

Attached to the defendant's motion is the affidavit of Dr. Marvin E. Aronson, who is board certified in the specialties of anatomic pathology, clinical pathology, and forensic pathology. After reviewing statements and testimony of the Captain and Chief Mate, as well as pages from the ship's log, medical log, and two accident/illness reports, all of which are attached to the motion, Dr. Aronson opined that:

Mr. Floyd was dead at the time of the initial examination by Captain Powell and Chief Mate Rathbun, and ... that no action that Captain Powell or Chief Mate Rathbun, (or anyone else), could have taken subsequent to their initial examination of Mr. Floyd could have restored life to Mr. Floyd.

The plaintiff does not dispute Dr. Aronson's opinion that nothing anyone could have done could have revived Mr. Floyd. Instead, the plaintiff relies on the testimony of Captain Norman Groebel and the

affidavit of Dr. Robert J. Segal[1] to question the credibility of the Captain and the Chief Mate and to assert that factual questions exist which preclude summary judgment for the defendant.

As the Court related above, the Captain and First Mate asserted that when they examined Mr. Floyd, they observed that Mr. Floyd was cool to the touch, that his arm had begun to stiffen, and that nothing they could have done would have revived Mr. Floyd. Dr. Segal's statement is to the effect that a body would not be cool to the touch within the first two or three hours after death and that there would be no stiffness within two hours after death. The testimony of Captain Norman Groebel, the plaintiff's expert, is that someone should have administered cardio-pulmonary respiration (CPR).

In addition to questioning the efficacy of CPR, which the plaintiff contends should have been administered by the Captain and the First Mate, the Court notes that Dr. Segal's statement does not dispute the medical evidence provided by Dr. Aronson that nothing could have been done to revive Mr. Floyd, but goes only to the time when Mr. Floyd died.

The Court finds *Carlton v. M/G Transport Services, Inc.*, 698 F.2d 846 (6th Cir. 1983), cited by the defendant, to be persuasive. In that case, a crew member complained that he was not feeling well, retired to his cabin for the night, and was found dead on the floor the next morning. At the time he was discovered, his color had changed and there were no life signs. The United States Court of Appeals for the Sixth Circuit held that since there was no evidence of negligence by the vessel owner, it would affirm the granting of the defendant's motion for a directed verdict, the standard of which mirrors that of a motion for summary judgment. *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Court in *Celotex* also held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 2552–2553.

■ The Court believes that the plaintiff has not produced evidence that the defendant was negligent with respect to the care provided to Mr. Floyd following his death or that there was anything that anyone could have done to revive Mr. Floyd once he was discovered to be dead.[2] Accordingly, the Court grants the defendant's motion for summary judgment and will dismiss the plaintiff's first cause of action for wrongful death.[3]

---

1. Dr. Robert J. Segal is board certified in the specialties of anatomic pathology, clinical pathology, and forensic pathology.

2. The plaintiff also asserts that the defendant negligently cared for Mr. Floyd prior to his death. The plaintiff contends that Mr. Floyd's complaints of a headache "should have placed defendant on notice that further treatment was warranted." In addition, the plaintiff argues that Mr. Floyd's statement to a crew member that it was cold out on deck and his wearing of long johns "in combination with the prior complaints by Floyd to the Chief Mate" should have spurred the defendant to provide further treatment for Mr. Floyd.

 The only complaint that Mr. Floyd made prior to his death was that he had a headache. Chief Mate Rathbun gave aspirin to Mr. Floyd and checked with him twice after giving him the aspirin. Moreover, Mr. Floyd told Chief Mate Rathbun that the aspirin were working. The Court believes that Mr. Floyd's complaint of a headache to Chief Mate Rathbun was insufficient to place the defendant on notice that Mr. Floyd was suffering from a life-threatening illness.

 With respect to Mr. Floyd's statement that it was cold out on deck and his wearing of long johns, the Court believes that these two facts were not sufficient to put a reasonable person on notice that Mr. Floyd's death was imminent. The Court finds that the plaintiff's argument is not persuasive and believes that the plaintiff has produced no evidence that the defendant was negligent with respect to the medical care provided to Mr. Floyd prior to his death.

3. The plaintiff also argues that the deposition of Seymour Raff, a passenger aboard the SS Shirley Lykes at the time of Mr. Floyd's death, shows that Captain Powell had been drinking on the night that Mr. Floyd died, that "any examination made ... was not made under the best of circumstances," and that therefore factual questions exist concerning Mr. Floyd's death.

## II. The defendant's motion to dismiss the claims for improper disposition of the decedent's remains made by the decedent's mother, brothers, and sisters

The plaintiff alleges in the second cause of action that the defendant, through its officers and agents, improperly disposed of the remains of Mr. Floyd by burying him at sea. The plaintiff asserts a claim for herself, as well as for Mr. Floyd's mother, brothers, and sisters for damages that each allegedly suffered as a result of Mr. Floyd's burial at sea.

The defendant contends in its motion pursuant to F.R.Civ.P. 12(b)(6) that its actions in burying Mr. Floyd at sea were reasonable under the circumstances and that it is therefore not liable to any of the parties asserting a claim for the allegedly improper disposition of Mr. Floyd's body. The defendant further alleges that if the Court rules that the plaintiff has stated a valid cause of action against the defendant, then the only person entitled to maintain a cause of action for the improper disposition of Mr. Floyd's body is Maria E. Floyd, the decedent's immediate next of kin. The defendant contends that the claims of the decedent's mother, brothers, and sisters must be dismissed for failure to state a claim upon which relief can be granted.[4]

■ The defendant asserts, and the plaintiff does not dispute, that there is no maritime precedent for assessing liability against a vessel owner for the burial at sea of a crew member and that therefore there is no authority for the proposition of who, if anybody, may sue for the allegedly improper disposition of the remains of a crew member. Citing *American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980), the defendant notes that when there is no federal maritime precedent on an issue, courts look to state law.

■ As the defendant states, courts have held that only a decedent's immediate next of kin has a cause of action for the improper disposition of the decedent's remains. This is usually the surviving spouse provided that he or she was living with the decedent at the time of death. If the spouse is deceased, the cause of action passes to the next of kin in order of relation established by the statute governing intestate succession. *See Steagall v. Doctors Hospital,* 171 F.2d 352 (D.C.Cir.1948); *Kohn v. United States,* 591 F.Supp. 568 (E.D.N.Y.1984); *Hendriksen v. Roosevelt Hospital,* 297 F.Supp. 1142 (S.D.N.Y.1969); *Black v. Georgia Memorial Park Cemetery, Inc.,* 173 Ga.App. 290, 325 S.E.2d 901 (1985); *Habersham Memorial Park, Inc. v. Moore,* 164 Ga.App. 676, 297 S.E.2d 315 (1982); *Leschey v. Leschey,* 374 Pa. 350, 97 A.2d 784 (1953); *Pettigrew v. Pettigrew,* 207 Pa. 313, 56 A. 878 (1904); *Sullivan v. Catholic Cemeteries, Inc.,* 113 R.I. 65, 317 A.2d 430 (1974); *Whitehair v. Highland Memory Gardens, Inc.,* 327 S.E.2d 438 (West Virginia 1985); P. Jackson, *The Law of Cadavers,* 157–163 (1950).

■ Mr. Floyd, who was not married at the time of his death, resided in Georgia. The Court believes that the law of Georgia concerning intestate succession provides that only Maria E. Floyd, the decedent's daughter, would have a cause of action. Ga.Code Ann. § 53-4-2 (1982). Thus, the Court will grant the defendant's motion to dismiss the claims for improper disposition

---

The defendant notes that Mr. Raff's testimony concerning Captain Powell's drinking does not show a specific recollection of the Captain's activity on the night of Mr. Floyd's death. The defendant further states that Captain Powell and seaman George Snay testified that Captain Powell had been up on the bridge that evening, and that the plaintiff does not dispute the facts that Mr. Floyd was dead when Captain Powell and Chief Mate Rathbun examined him and that there was nothing that either the Captain or the Chief Mate could have done to restore Mr. Floyd's life. The Court finds the plaintiff's position is unpersuasive and rejects the plaintiff's argument.

**4.** In ruling on the defendant's motion to dismiss, the Court notes that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

of the decedent's remains made by the decedent's mother, brothers, and sisters.[5]

An appropriate Order follows.

## ORDER

AND NOW, this 11th day of March, 1987, upon consideration of the defendant's motion for summary judgment on the plaintiff's first cause of action (Docket Entry No. 20); the plaintiff's response to the defendant's motion for summary judgment on the plaintiff's first cause of action (Docket Entry No. 24); the defendant's reply to the plaintiff's response to the defendant's motion for summary judgment on the plaintiff's first cause of action (Docket Entry No. 25); the plaintiff's supplemental response to the defendant's motion for summary judgment on the plaintiff's first cause of action (Docket Entry No. 26); the defendant's response in support of the defendant's motion for summary judgment on the plaintiff's first cause of action (Docket Entry No. 27); the defendant's motion to dismiss the claims for the improper disposition of the decedent's remains made by the decedent's mother, brothers, and sisters (Docket Entry No. 17); the plaintiff's response to the defendant's motion to dismiss the claims for the improper disposition of the decedent's remains made by the decedent's mother, brothers, and sisters (Docket Entry No. 19); the reply of the defendant to the plaintiff's response to the defendant's motion to dismiss the claims for improper disposition of the decedent's remains made by the decedent's mother, brothers, and sisters (Docket Entry No. 21); the reply of the plaintiff to the defendant's response to the plaintiff's response to the defendant's motion to dismiss the claims for improper disposition of the decedent's remains made by the decedent's mother, brothers, and sisters (Docket Entry No. 23); and in accordance with the foregoing Memorandum, it is hereby ORDERED that:

1. The defendant's motion for summary judgment on the plaintiff's first cause of action is GRANTED and judgment is entered for the defendant and against the plaintiff on the plaintiff's first cause of action; and

2. The defendant's motion to dismiss the claims for improper disposition of the decedent's remains made by the decedent's mother, brothers, and sisters is GRANTED and the claims for improper disposition of the decedent's remains made by the decedent's mother, brothers, and sisters are dismissed with prejudice.

---

5. The Court notes that the Jones Act, 46 U.S.C. § 688, which incorporates by reference the Federal Employees Liability Act, 45 U.S.C. § 51, provides the remedy available to the personal representative of a seaman who dies at sea as a result of his employer's negligence. The Jones Act limits which relatives of a seaman may recover for his death, providing that his spouse and children may recover damages, but precluding a seaman's parents from recovering damages unless the decedent had no spouse or children. 45 U.S.C. § 59. Thus, while not controlling, the Jones Act restricts the number of parties who may recover damages arising from a tort to the victim's immediate next of kin.